[No. 3388.   March 21, 1929.]

[Rehearing Denied Sept. 28, 1929.]

STATE v. SOUTHERN PAC. CO.

[281 Pac. 29.]

Del W. Harrington, of El Paso, Tex., and E. R. Wright, of Santa Fe, for appellant.

Frank H. Patton, Asst. Atty. Gen., and J. Frank Curns and J. W. Chapman, both of Santa Fe, for the State.

OPINION OF THE COURT

BICKLEY, C. J.   This is a case brought by the state of New Mexico against the Southern Pacific Company, a corporation, in the district court of Harding county, for the collection of certain taxes for the years 1921-1925, inclusive.   The complaint alleges that the defendant is a railway company operating a railway between the city of Tucumcari, N. M., and Dawson, N. M., and whose line of railway passes through various school districts of the county of Harding.   It further alleges that certain taxes

were duly and regularly assessed in Harding county against the Dawson Railway Company, the predecessor of the Southern Pacific Company, for the years 1921-1924, inclusive, and for the year 1925 they were duly and regularly assessed against the Dawson Railway Company and the defendant, Southern Pacific Company; that said taxes covered state, county, school, and municipal taxes, in the amounts shown in the copies of tax statements attached to the complaint; that the total amount so assessed for all of said years aggregated $126,562.86; that the Dawson Railway Company and the defendant, Southern Pacific Company, have paid thereon the sum of $122,281.76, leaving a balance of unpaid taxes in the sum of $4,281.10, together with interest and penalties thereon, as provided by law; that said unpaid taxes were legally and duly incurred and are overdue and delinquent. The prayer is the ordinary prayer for a judgment, and for a declaration of a lien, and an order for the sale of said property in the manner provided by law.

Plaintiff and defendant stipulated the facts contained in the assessment rolls, and said stipulation and facts were made a part of defendant's amended answer. The material allegations of the amended answer are:

Defendant denies that the sum of $4,281.10 was duly, regularly, or legally assessed and levied against the Dawson Railway Company or the Southern Pacific Company, and denies that said sum or any portion thereof is due and unpaid. It affirmatively alleges: That said sum results from certain special levies made in the years 1921-1925, as follows:

| Year | Designation | Rate |
|------|-------------|------|
| 1921 | Interest and sinking | .00124 |
| 1922 | Interest and sinking county expense debentures, chapter 48, § 17, 1921 Laws | .00147 |
| 1923 | Interest and sinking fund | .00159 |
| 1924 | Interest certificates of indebtedness | .00343 |
| 1925 | Interest on certificates of indebtedness | .00342 |

That said levies and assessments were pretendedly made under the authority of chapter 48, § 17, of the Session Laws of 1921; that said section does not provide for or

authorize the making of any such levy for any of said years, for the purpose of paying either principal or interest of any certificates of indebtedness authorized by said section 17; that said certificates of indebtedness were issued in July, 1921, before any levies had been made; that no levies have ever been made for the purpose of meeting the expenses payable for the years 1920-1921 out of the court fund, salary fund, and current expense fund, but that said levies and assessments were made to pay interest and principal of the certificates of indebtedness; that said certificates of indebtedness were issued without authority and are void; that each of said levies and assessments is void and in contravention of the laws and Constitution of the state of New Mexico, and that the property of the said defendant was not, and is not, subject to taxation for or on account of said levies.

Plaintiff filed a demurrer to the amended answer. This demurrer although very specific and quite lengthy, merely presents the question that the facts pleaded in the amended answer, including the facts stipulated, show that the levies and assessments were authorized by law and are valid and regular, and therefore the facts pleaded in this amended answer do not constitute a defense. The trial court sustained the demurrer and gave defendant leave to further plead. Defendant refused to further plead, and the court entered judgment upon the basis of the stipulated facts, and the defendant appealed and assigned as error the ruling of the court in sustaining the demurrer.

Appellant contends:

(1) That the levies and assessments are void, because there is no authority, in section 17 or anywhere else in the act, for the levying of any tax to pay interest and principal on the certificates of indebtedness.

(2) That the certificates of indebtedness are void, because issued before a levy was made, and therefore the levy to pay same is void.

(3) That tax statutes must be strictly construed.

We will first consider appellant's contention that tax statutes must be strictly construed. We have no fault to find with this contention, so long as the rule is properly

applied in a case calling for its application. It must, however, be borne in mind that this contention is a mere statement of one of the rules of statutory construction, and as such has received wide sanction. Cooley on Taxation, vol. 2 (4th Ed.) §§ 501-505.

It is, however, fundamental that the primary rule in interpreting a statute is to ascertain if possible the legislative intent, and, if the intent is clear, no occasion exists for invoking rules of statutory construction having to do with statutes of a particular class. The foregoing has been well expressed in Lewis' Sutherland Statutory Construction, vol. 2 (2d Ed.) § 363, as follows:

> "If a statute is vaild it is to have effect according to the purpose and intent of the law-maker. The intent is the vital fact, the essence of the law, and the primary rule of construction is to ascertain and give effect to that intent. * * * In construing statutes the proper course is to start out and follow the true intent of the Legislature and to adopt that sense which harmonizes best with the context and promotes in the fullest manner the apparent policy and object of the Legislature. * * * If a statute is plain, certain and unambiguous, so that no doubt arises from its own terms as to its scope and meaning, a bare reading suffices; then interpretation is needless. * * * The rules of construction with which the books abound apply only where the words used are of doubtful import; they are only so many lights to assist the court in arriving with more accuracy at the true interpretation of the intention. This is true whether the statute be public or private, general or special, redemial or penal."

See 25 Ruling Case Law (Statutes) § 216; Territory v. Prather, 18 N. M. 195, 204, 135 P. 83; State v. Llewellyn, 23 N. M. 43, 69, 167 P. 414; De Graftenreid v. Strong, 28 N. M. 91, 94, 206 P. 694; City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 46 A. L. R. 828; State of Delaware v. Rose (Del.) 132 A. 864, 45 A. L. R. 85; Bridgeman v. City of Derby, 104 Conn. 1, 132 A. 25, 45 A. L. R. 728; Walgreen Co. v. Industrial Commission, 323 Ill. 194, 153 N. E. 831, 48 A. L. R. 1199.

Chapter 48, Session Laws of 1921, in clear, certain, and unambiguous language creates the county of Harding, intending that it should come into existence on June 10, 1921, and thereafter function as a county. The primary object and purpose of the act is therefore clearly expressed. If there be some uncertainty or ambiguity in

any portion of the act regarding the manner in which the county is to be placed in a position so that it may function as contemplated, such ambiguity must, if possible, be construed in a manner to effectuate the intent, and not destroy or nullify the primary object and purpose, of the act. Fisherdick v. San Juan County Board of Education, 30 N. M. 454, 458, 236 P. 743; Gallegos v. Ortiz, Sheriff, 28 N. M. 598, 216 P. 502; Rapp v. Venable, 15 N. M. 509, 110 P. 834; Baca v. Bernalillo County, 10 N. M. 438, 62 P. 979; Ex parte De Vore, 18 N. M. 246, 136 P. 47; State of New Mexico v. Davidson et al., 33 N. M. 664, 275 P. 373. See, also, authorities heretofore cited.

Appellant's attack on the levies in question centers itself in section 17 of the act in question, which is as follows:

"For the purpose of meeting expenses payable out of the court fund, salary fund and the current expense fund of the county of Harding, contracted and payable for the years 1920 and 1921, and not otherwise, said county of Harding may after tax levies are duly made therefor, anticipate the collection of such tax levies, by issuing not to exceed thirty thousand dollars ($30,000.00) of certificates of indebtedness of the county of Harding. Such certificates of indebtedness shall be issued in a form to be approved by the district attorney of the Eighth judicial district of the state of New Mexico, and shall be payable not more than five years after date of issue, shall bear interest at not to exceed the rate of six per centum (6%) per annum, payable semi-annually, and shall be signed by the chairman of the board of county commissioners of the county of Harding, and countersigned by the county treasurer of the county of Harding, and shall have attached thereto coupons bearing the engraved or lithographed fac-simile signature of such county treasurer evidencing the semiannual installments of interest on such certificates of indebtedness. The treasurer of the county of Harding shall keep a correct and complete record of all such certificates of indebtedness issued. Such certificates of indebtedness shall pledge the proceeds of the tax levies which they anticipate for the payment thereof. Such certificates of indebtedness shall be sold by the county treasurer of the county of Harding in the same manner as provided by law for the sale of bonds by counties in the state of New Mexico. The proceeds of such tax levies when collected shall be set aside by the county treasurer of said county of Harding and used for the payment of said certificates of indebtedness and the interest thereon and for no other purpose until said certificates of indebtedness and the interest thereon have been fully paid."

Section 17, hereinabove set forth, considered alone, and independent of the remainder of the act, is unquestionably difficult to understand and some of the language used is ambiguous. Much has been made of the seeming obscurity by counsel in presenting this case. When, however, section 17 is considered in conjunction with the entire act, and full effect is given to the clearly expressed intent of the Legislature and the law hereinabove annunciated is applied, the purpose and object of said section becomes clear.

We know that Harding county was created and was intended to function from June 10, 1921, as a county; that its first tax revenue, under the general tax law, would be received in December, 1921, to be used for the fiscal year beginning December 1, 1921, and ending November 30, 1922; that it had to function from June 10, 1921, to November 30, 1921, and in order to do so must obtain from some source funds with which to meet expenses payable out of the court fund, salary fund, and current expense fund, for such period; that such expenses for such period could not be raised under the general tax law, which only authorized levies for the following fiscal year, and the funds derived therefrom could not be used for any other fiscal year. It is, we think, demonstrable that by the expression "for the years 1920 and 1921" the Legislature could have meant only the then fiscal year embracing 1920 and 1921.

It will be noted that section 17 provides:

"For the purpose of meeting expenses payable out of the court fund, salary fund and current expense fund of the county of Harding, contracted and payable for the years 1920 and 1921, and not otherwise, said county of Harding may after tax levies are duly made therefor, anticipate the collection of such tax levies, by issuing not to exceed thirty thousand dollars ($30,000.00) of certificates of indebtedness of the county of Harding."

It is clear that the foregoing authorized a special tax levy of some kind to raise funds, so that the county could function between June 10, 1921, and November 30, 1921.

The Legislature, however, knew that no funds could be derived from such a levy until December, 1921, when the first collections would be made, and that something

more must be done to make the funds available when needed. It therefore further provided that certificates of indebtedness may be issued in anticipation of the collection of such tax levies. The act does not require that the certificates of indebtedness be issued, but it does authorize their issuance, leaving the matter to the discretion of the proper officers of Harding county. It is rather difficult to understand whether the act authorized a special tax levy for court fund, salary fund, and current expense fund for the period between June 10, 1921, and November 30, 1921, or a special tax levy to pay principal and interest of the certificates of indebtedness which were authorized. Many reasonable and substantial arguments can be advanced in favor of each alternative. We do, however, know from further consideration of the section that the certificates of indebtedness might be issued so as to mature in five years and bear interest at 6 per cent. per annum, and that such certificates must pledge the proceeds of the tax levy, and that the proceeds of such levies when collected shall be set aside and used for the payment of said certificates of indebtedness and the interest thereon, and for no other purpose.

It would seem clear that either alternative would carry out the object and purpose of the act. One method might serve the purpose as well as the other. But the one to be followed would depend upon the amount of certificates of indebtedness the board of county commissioners decided to issue and the length of time they were to run. If it were decided to issue $30,000 of certificates of indebtedness, maturing in five years, as was done in this case, then the first alternative would not be applicable, for the moneys necessary to retire the certificates would not be needed until the certificates matured, and manifestly a special levy for court fund, salary fund, and current expense fund for the period in question could only be made in one levy by the existing board of county commissioners. Such a levy would not only be a hardship on the taxpayers of the new county, but it would produce all the money, in one year, necessary to pay interest and retire the certificates, which did not mature for five years. The money would remain idle in the treasury, and the county

would unnecessarily pay interest for four years. Having issued the certificates maturing in five years, the natural and logical method to follow would be to make special levies over a period of years, to pay interest and principal of the certificates. Had the county commissioners decided to issue the certificates payable in one year, then they could well have followed the first alternative, and have made one special levy for court fund, salary fund, and current expense fund for the period in question.

Unquestionably the Legislature intended to grant considerable latitude and discretion to the officers of the new county, so that, after determining the amount of certificates that had to be issued to raise the necessary funds, they might make the levy in such manner as best to meet the conditions and retire the certificates. We think it clear that what the officers did do was within the act and authorized thereby.

Appellant contends that the certificates of indebtedness could only be issued "after tax levies are duly made therefor," and, having been issued before, they were void. Unquestionably the Legislature intended that the certificates of indebtedness would be issued when the county came into existence, in order to raise the necessary funds to meet the expenses. To give meaning to each word used, as appellant contends, would prevent the issuing of the certificates of indebtedness and procurement of funds until October, 1921, when levies could first be made. Furthermore, if levies had to be made before the certificates of indebtedness could be issued, then only a part of the certificates could be issued in 1921, and the remainder in succeeding years, thereby defeating the procurement of immediate funds.

How could the county function between June and October, 1921? Yet the Legislature clearly intended it should. Manifestly the Legislature used inadvertent language, which, if followed, would not carry out the clear intent and object of the act, but would nullify and destroy same. To disconnect the quoted words from section 17 and the remainder of the act, and give each word its meaning, independent of the clearly expressed intent of

the Legislature, would lead to absurdity, and destroy the very intent, purpose and object of the act. We must adhere to the principles of law heretofore laid down, and thereunder reject the word "after" as meaningless, thereby giving vitality to the clearly expressed intent, object, and purpose of the act.

We must therefore hold that chapter 48 of the Session Laws of 1921 does authorize the levies made; that appellant has not pointed out wherein the assessments are illegal or void. It follows that the ruling and judgment of the district court was correct, and should be affirmed, and the cause remanded; and

It is so ordered.

WATSON and PARKER, JJ., concur.

## ON MOTION FOR REHEARING

BICKLEY, C. J.  ▇ Appellant has filed a motion for rehearing, based upon the propositions that the levies of taxes involved are contrary to the provisions of chapter 140, Laws 1921, which place a limitation of five mills upon all county levies except levies for the payment of the public debt or interest thereon, etc., and that the provisions of section 17, chapter 48, Laws 1921, as construed by this court, are contrary to the provisions of section 10 of article 9 of the state Constitution, which provide that "no county shall borrow money except for the purpose of erecting necessary public buildings or constructing or repairing public roads and bridges, and in such cases only after the proposition to create such debt shall have been submitted to the qualified electors of the county who paid a property tax therein during the preceding year," etc.

Appellant, in its brief in support of the motion, says that it may be contended that the case of Martinez v. Gallegos, 28 N. M. 170, 210 P. 575, is a complete answer to the latter contention. We think it is. In that case, we quoted with approval from the opinion in State v. Saint et al., 28 N. M. 165, 210 P. 573, 574, wherein the statement is made that the constitutional power to create new counties include the power to provide:

"For raising the funds for current expenses, and perhaps other provisions to enable the county to take its proper place among other counties in the state, and to perform its proper governmental and administrative duties, and in fact that it includes provisions for everything necessary and proper to enable the county to function as a complete municipal subdivision of the state."

We held that public buildings, such as a court house and jail, were such a necessity. In the Saint Case, supra, we held that the establishment of a county high school is not necessary to the orderly administration of the usual governmental and administrative functions of a county. When we are called upon to decide whether the expenditure for a particular county purpose is necessary to the proper and orderly functioning of a new county, we do not hesitate to say that it was as necessary to the new county of Harding that it have the funds provided for in section 17 of the act to meet current expenses as it was to have a court house and jail; probably more so.

Appellant contends that, while Martinez v. Gallegos, supra, is the settled law of this jurisdiction, yet it is not applicable to the facts in the case at bar, because in the Martinez Case the court was dealing with a legislative grant of power to borrow money for a purpose permitted by the provisions of section 10 of article 9 of the Constitution, to wit, for the purpose of "erecting necessary public buildings," while here we are dealing with a borrowing prohibited by said section. We see no difference in principle. If said section 10 of the Constitution must yield in one respect to the constitutional power of the Legislature to create new counties, we are unable to see how said section is controlling at all upon the Legislature in its exercise of its power to create new counties, and, in doing so, to authorize such new county to incur financial obligations, provided the purpose for which the debt is incurred or the funds raised is necessary in order to enable the new county to function as a complete municipal subdivision of the state.

In view of the foregoing, appellant's contention that the levies exceed the limitations set forth in chapter 140, Laws 1921, is not sound, because said limitations do not apply to levies "for the payment of the public debt or interest thereon."

The motion for rehearing is overruled; and it is so ordered.

WATSON and PARKER, JJ., concur.

CATRON and SIMMS, JJ., did not participate.