24 P.(2d) 265

**STATE ex rel. ABERCROMBIE v. DISTRICT COURT OF FOURTH JUDICIAL DIST. WITHIN AND FOR GUADALUPE COUNTY et al.**

No. 3892.

Supreme Court of New Mexico.

July 10, 1933.

W. J. Barker, of Santa Fé, and M. E. Noble, of East Las Vegas, for relator.

D. J. Leahy and H. E. Blattman, both of Las Vegas, for respondent.

WATSON, Chief Justice.

This is an original proceeding instituted by application for a writ of prohibition. The cause has been heard upon alternative writ and answer.

The relator, on January 2, 1933, armed with a certificate of election, took possession of the office of county school superintendent of Guadalupe county, and now holds it. Mrs. Martinez, the unsuccessful candidate for the office, claiming to have been elected and to be entitled to it, and alleging the refusal of the district attorney to act upon her complaint, commenced an action in the name of the state to recover the office and its emoluments. Her action is admittedly planted upon the statute of quo warranto. 1929 Comp. St. c. 115 (section 115-101 et seq.).

The only question before us is whether a district court has jurisdiction to entertain such an action as that described. Relator does not question that this statute, being chapter 28, Laws 1919, gave the jurisdiction. It is now challenged on the single ground that a later statute, the election code (Laws 1927, c. 41, 1929 Comp. St. c. 41 [section 41-101 et seq.]), embracing (article 4 [section 41-401 et seq.]) provision for the contest of elections, set up an exclusive remedy in a case of this kind and superseded the former remedy by statutory quo warranto.

The 1927 act is a comprehensive election code. It contains complete provision for contest by any unsuccessful candidate for any public office. If he prevail, he may have judgment of possession, for all emoluments

from the beginning of the term, and for costs. Under these provisions, we have held that "an unsuccessful candidate has a remedy by contest upon any ground or grounds which go to show that he was legally elected to the office." Rogers v. Scott, 35 N. M. 446, 300 P. 441, 442.

Laws 1919, c. 28 (1929 Comp. St. c. 115), is a reformation and extension of the law of quo warranto. While it does not abolish the old "writs and proceedings," it says that they need not be sued out in form, and that the remedies previously obtainable thereby may be "commenced" (obtained) by filing a complaint as in other civil actions. Specifying the appropriate occasions for such an action, the statute discloses that it covers the field in which theretofore, in this jurisdiction, it had been recognized as proper to apply to the court for leave to file an information in the nature of quo warranto. In addition, it expressly constitutes the proceeding an appropriate remedy to test the title, not only of an incumbent of an office, but of a rival claimant, who, as relator, may lay claim to it, and adds to the old remedy of ouster of the usurper the means by which the successful relator may recover the office, its emoluments, and his costs. The latter may even require the alleged usurper to give security for repayment of the emoluments or have an injunction to prevent their being paid to him pending the litigation. This statute, as construed in State ex rel. Hannett v. District Court, 30 N. M. 300, 233 P. 1002, affords to the unsuccessful candidate for a public office as complete a remedy as he could ask.

In America it has been generally considered that the common-law mode of testing title to office is by information in the nature of quo warranto under the Statute of Anne. The election contest is purely statutory. With the coming in of such statutes, the question has always arisen whether the new method is exclusive. Respondent contends that it is merely cumulative unless the statute has clearly expressed to the contrary, citing 51 C. J. 323. If that were accepted as the true rule, there is strong reason to urge that the 1927 Legislature clearly manifested an intention to adopt an exclusive procedure. It said: "Any action to contest an election shall be commenced by the filing of a verified notice of contest. * * *" Section 41-602.

It is not easy to reconcile this with the present assumption to commence an action to contest an election "by the filing of a complaint as in other civil actions."

In the note "Statutory Remedy for Contest of Election as Exclusive," Ann. Cas. 1913E, 982, 985, numerous decisions have been collected. The author says:

"Majority rule. The authorities generally involving the question whether statutory remedies for contesting elections are exclusive appear to be in a state of conflict and uncertainty. It seems, however, that the rule adopted in the reported case, to the effect that the statutory remedy is exclusive, has found favor in at least the majority of jurisdictions. * * *

"Minority rule. In some jurisdictions the rule has been adopted that while the legisla-

ture may properly adopt a special statutory remedy for contesting elections, such enactment does not of itself preclude a person from availing himself of such other remedies as may exist, and unless it is expressly or by necessary implication provided that the statutory remedy shall be exclusive, it merely operates as a cumulative remedy."

We doubt if there is such a difference of judicial opinion as this statement would suggest. These decisions, to be of great value in determining the concensus or weight of authority, would require careful analysis and classification, since there are all kinds of statutory proceedings which might be called election contests, and many statutory modifications and adaptations of the procedure by information. Such a task we cannot undertake.

In the article on Elections, 9 R. C. L. § 147, it is said: "There is considerable difference of opinion, however, as to whether the enactment of a method for contesting an election excludes the use of common law remedies of mandamus and quo warranto. The conclusion supported by a majority of the cases seems to be that the statutory remedy is exclusive. This rule, it would seem, does not, however avoid all quo warranto proceedings concerning elective offices, but only such as are in reality contests between two persons for the same office, and there are numerous decisions holding to the doctrine that the establishment of a statutory method by which contests may be determined does not preclude the people in their sovereign capacity from inquiring by

quo warranto proceedings into usurpations of office."

This conclusion strikes us as correct upon principle. If correct, when considering a statutory election contest on the one hand, and the common-law proceeding on the other, stronger reasons support it where, as here, the common-law proceeding has been enlarged to embrace what is neither more nor less than an election contest in which the public may have no concern. In the case at bar we consider that the state has affirmatively disclaimed any right or interest. Its proper law officer has refused to act. In so far as, and whenever, the public interest is involved in testing title to office, there is no contention here that the proceeding by quo warranto has been abolished by the creation of a proceeding wherein the contest or litigation is purely private. The question here presented is merely whether an unsuccessful candidate has, under our laws, an option to proceed in the one way or the other for the vindication of his private right.

The question is slightly complicated by the fact that the 1927 act is not entirely original. Before 1919, when the quo warranto statute was enacted, there were provisions for election contests. Code 1915, § 2066 et seq. And the 1919 act provided, in its section 15 (Comp. St. 1929, § 115-115): "This act shall not be construed to in any way affect the provisions of the statutes now in force in relation to election contests."

Assuming from this section that quo warranto was intended as a remedy additional to

the existing contest remedy, why should not the new contest remedy be considered merely cumulative in its relation to quo warranto?

The assumption just indulged is not necessarily correct, however. Section 15 certainly preserved the existing right of contest. There the certainty ends. Whether it made quo warranto a cumulative remedy for the assertion of the purely private right or excepted pure contest cases from the purview of the act has never been decided, and remains in doubt.

The election contest statutes in force in 1919 were deficient. They certainly did not apply to the large and important class of state offices. It might be questioned whether they included other offices than those of probate judge, sheriff, constable, and justice of the peace. See Crist v. Abbott, 22 N. M. 417, 163 P. 1085. So, as to the more important and perhaps the more numerous offices, the unsuccessful candidate could only apply to the Attorney General to move the court for leave to file the information in the nature of quo warranto. This was not a matter of right. However strong the relator's claim, the court might disregard it to advance or protect some supposed public interest. State ex rel. Cobb v. Raithel, 24 N. M. 42, 172 P. 1137. Nor was the remedy complete. It spent its force in ousting the usurper. The relator might still encounter difficulty and require further litigation to obtain his office and still further to recover the emoluments.

These two cases, the one decided in 1917, the other in 1918, brought out a situation which the 1919 Legislature no doubt designed to remedy. It could then have broadened the election contest statute, perhaps more logically and to better advantage. Instead, it made over the law of quo warranto. It made that procedure available as a practical and complete remedy for a defeated candidate for any public office, unless it be questioned whether, in view of section 15, supra, the act had application to those offices as to which the remedy by contest was available.

■ Not content with this disposition of the matter, the 1927 Legislature, reconsidering in full the subject of elections, determined upon a comprehensive contest procedure applicable to every public office. If such a procedure had existed in 1919, it may be doubted if chapter 28 of that session would have been adopted. Respondent stresses the fact that it was not repealed by the election code, or referred to, and that no provision similar to section 15 of the earlier act was resorted to, in attempted explanation of the relation between the two acts. That is a common legislative oversight, however, the occurrence of which can have but little weight in the present consideration. The two statutes stand side by side, and must be harmonized and both preserved so far as possible.

In so far as quo warranto is the public's remedy against usurpation, there is neither overlapping nor incompatibility. That use of the 1919 act is unaffected by the 1927 act. It may sometimes be difficult to determine whether the case is of the one class or the

other. Questions arising out of such a case are reserved.

One difference between these two proceedings seems to us conclusive against the claim that they are equally available to one asserting the mere private right. There is no limit of time within which quo warranto must be instituted; but the contest must be commenced by filing and serving notice within thirty days after the issuance of the certificate of election. To limit the time within which private right may be asserted, to the possible detriment of the public business, is reasonable and usual. Relator correctly points out that, under the present and former laws, this court has always considered time a vital element in the legislative policy of election contests, and held that the mandatory limits have been set both in the public and in the private interest.

On the other hand, to limit the time within which the state may proceed against usurpation would be new and doubtful policy.

It seems to us impossible to hold, either on principle or as matter of statutory construction, that a special proceeding, thus strictly limited as to time, is merely cumulative of an earlier statutory remedy without the time limit. If respondent were right in all other contentions, we must still hold that the Legislature spoke advisedly and meant what it said in providing that "any action to contest an election shall be commenced by the filing of a verified notice of contest * * * [which] notice must be filed and a copy thereof served upon the adverse party within thirty days

from the issuance of the certificate of election. * * *" Comp. St. 1929, §§ 41-602, 41-603.

Respondent points to the constitutional jurisdiction of the district courts to issue writs of quo warranto. N. M. Const. art. 6, § 13. We are not impressed, however, with the suggestion, if respondent intended to offer it, that the legislative branch has committed any offense against this jurisdiction in adopting an election contest procedure as an exclusive private remedy.

We conclude that the alternative writ should be made permanent, and it is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.