Francisco Vigil died intestate. He left surviving him a widow (his second wife) and four children by his first wife. Pedro Ortiz, the appellee, as the surviving husband of Soledad V. de Ortiz, a deceased daughter of Vigil, claimed the share of the estate that Soledad would have inherited if she had outlived her father, pursuant to the provisions of Comp. St. 1929, § 38-108. Soledad died in April, 1906, leaving surviving her the said Pedro Ortiz, her husband, and an infant daughter, which infant daughter died in July or August, 1906.
The appellant, Cesarita V. de Garcia, one of the children of the deceased, objected to the claim. The probate court decreed in favor of appellee. An appeal was prosecuted to the district court, where judgment was again entered in favor of appellee, from which latter judgment, the case is brought here on appeal.
Comp. St. 1929 § 38-108, is as follows: "38-108. Inheritance by grandchildren. If any one of the children of the intestate be dead, the heirs of such child shall inherit his share in accordance with the rules herein prescribed in the same manner as though such child had outlived his parents."
Appellant contends that the phrase "the heirs of such child" means "child, children and descendants" of one who dies intestate and that Pedro Ortiz, the husband, is not an heir within the meaning of the above statute, and cannot inherit his deceased wife's share in the same manner as if she had outlived her parent.
The appellee on the other hand, contends that a literal interpretation of the term "the heirs of such child" would include him as an heir, as the surviving husband of Soledad who would have inherited her share as though she had outlived her parent.
True, descent and distribution of property in this state is regulated by statute, and *Page 385 
by statute a husband and wife can be heirs to each other (Teopfer v. Kaeufer, 12 N.M. 372, 78 P. 53, 67 L.R.A. 315), and a literal interpretation of the provision of our statute under consideration might lead us to the same conclusion reached by the trial court. Nevertheless, the fundamental rule in construing statutes is to ascertain and give effect to the intention of the Legislature. To ascertain the intended purpose of the act we are not bound to a strict interpretation of the letter of the act if such strict interpretation defeats the intended object. As was said by the Supreme Court of the United States, in a very recent case decided May 28, 1934: "The rule that, where the statute contains no ambiguity, it must be taken literally and given effect according to its language, is a sound one not to be put aside to avoid hardships that may sometimes result from giving effect to the legislative purpose. Com'r of Immigration v. Gottlieb,265 U.S. 310, 313, 44 S.Ct. 528, 68 L.Ed. 1031; Bate Refrigerating Co. v. Sulzberger, 157 U.S. 1, 37, 15 S.Ct. 508, 39 L.Ed. 601. But the expounding of a statutory provision strictly according to the letter without regard to other parts of the act and legislative history would often defeat the object intended to be accomplished." Guy T. Helvering, Commissioner of Internal Revenue, v. New York Trust Co., 54 S.Ct. 806, 808, 78 L.Ed. ___.
A review of the legislative history of section 38-108 leads us to the conclusion that the term "the heirs of such child," as found in section 38-108, is limited in its meaning to "direct heirs," "heirs of the body," or, as contended for by the appellant, "grandchildren."
Let us view section 38-108, in its original setting. It is to be found as section 21 (subsection 1412 thereof) of chapter 90, Session Laws of 1889. Subsection 1412 and its important companion sections, appearing as subsections 1411 to 1416 of said section 21, disclose some interesting facts. With the exception of the surviving spouse of a mate just deceased, the inheritance runs the full length of the blood stream, first descending then ascending, seeking an heir of the blood before casting itself to the heirs of the deceased spouse, or becoming escheat.
The various sections each in its order present progressive alternatives in the search for such an heir. The estate subject to inheritance being identified by subsection 1411 passes one-fourth to the surviving husband or wife, and the remainder in equal shares to the children of decedent.
By subsection 1412 (now Comp. St. 1929, § 38-108) if any one of the children of the intestate be dead, such child is in contemplation of law deemed to have outlived the intestate, for the purpose of receiving and transmitting its share of the inheritance to the "heirs" of such child, whosoever may be contemplated by that term as here employed.
Subsection 1413 (now Comp. St. 1929, § 38-109), the very next section, furnishes the key to the meaning of the word "heirs" as used in subsection 1412. "If the intestate leave no issue" can only mean "if the intestate leave no children or their descendants." The Legislature is now directing how the inheritance shall pass if the course of descent ordered by subsection 1412 for any reason fails. *Page 386 
Necessarily, the phrase "if the intestate leave no issue" speaks as of the date of the intestate's death. We cannot import into subsection 1413 the fictional resurrection of a deceased child and consider him alive at intestate's death. Certainly an intestate dying without lineal descendants, however many children may have predeceased him or her, dies "leaving no issue." Subsection 1413 speaks of facts as they actually exist at intestate's death, and not of a fictional existence at such time of a predeceased child which itself died without issue. The Legislature itself then has interpreted for us what it meant when it used the phrase "heirs of such child" in subsection 1412, viz., "direct heirs," "heirs of the body," or borrowing the Legislature's own term, "issue." We cannot consider the spouse of the deceased child, "issue," within the meaning of said section. The surviving husband of the deceased child in the instant case could by no stretch of the imagination be deemed such.
Let us assume that Soledad was the sole offspring of Francisco Vigil's first marriage, both she and her only child, the intestate's grandchild, having predeceased intestate, his death literally and truly fulfills the condition prerequisite to casting heirship under subsection 1413, viz., "if the intestate leave no issue." The entire estate would then pass to his surviving wife; none of it to the appellee, because he is not the "issue" contemplated by subsection 1413 of the statute.
True that the provisions of subsection 1413 do not come into play and become operative until heirship fails under subsection 1412; yet the language of subsection 1413 discloses a contemplated failure of the inheritance under subsection 1412. This is found in the first phrase of subsection 1413, "If the intestate leave no issue." We can readily give to the word "heirs" in subsection 1412 the meaning "direct heirs" or "heirs of the body," and the language of the two sections is then harmonized and the true legislative intent is readily discovered.
The act of 1852 (section 1432, C.L. 1884) defined direct heirs as follows: "Direct heirs are the legitimate children and descendants of the testator, or persons dying intestate." In some sections of the 1852 act (sections 1424, 1425, C.L. 1884) the Legislature uses the terms "heirs" and "body heirs" interchangeably. The 1852 act reflects rather forcibly the purpose to keep the inheritance within the blood stream. Section 6 thereof (section 1436, C.L. 1884) reads: "In the absence of children or descendants, the nearest ancestors become heirs, such as the parents, and in the absence of these, the paternal or maternal grand-parents."
Sections 1 to 7 of c. 32, Laws 1887, reflect rather strongly the desire to keep the inheritance within the blood line. Sections 1 and 2 thereof read:
"Section 1. The real and personal property of any person dying intestate shall descend to his or her children in equal proportions; and posthumous children shall inherit equally with those born before the death of the ancestor.
"Sec. 2. If any children of such intestate shall have died intestate, leaving a child or children, such child or children shall inherit *Page 387 
the share which would have descended to the father or mother; and grandchildren and more remote descendants and all other relatives of the intestate, whether lineal or collateral, shall inherit by the same rule: Provided, that if the intestate shall have left, at his death, grandchildren only, alive, they shall inherit equally per stirpes."
While chapter 32, L. 1887, is expressly repealed by chapter 90, L. 1889, the spirit of these earlier acts is not entirely abandoned in the act of 1889, and we may with advantage and propriety draw to our aid these earlier statutes in catching the meaning of the later.
Or ignoring prior statutes and construing together, as we must and have, the provisions of the 1889 act, we are led inescapably to the conclusion that the word "heirs" has a narrower significance than urged upon us by appellee.
Now then, aside from our own interpretation, let us see if we can find light in the authorities either to confirm or reject our conclusion. The language of subsection 1412 and of subsection 1413 is so similar to the language of sections 2454 and 2455 of the Revised Code of Iowa of 1885, as to suggest that these sections had been adopted from Iowa, and that possibly the courts of Iowa might furnish us the needed light. A reference to the annotations convinces us that such was the case. The Iowa decisions abundantly satisfy us of the correctness of our interpretation.
We briefly list the Iowa decisions. First, the language being construed in Iowa originally and at the time of our 1889 act was as follows:
"Sec. 2454. If any one of his children be dead, the heirs of such child shall inherit his share in accordance with the rules herein prescribed in the same manner as though such child had outlived his parents.
"Sec. 2455. If the intestate leave no issue, the one-half of his estate shall go to his parents and the other half to his wife; if he leaves no wife, the portion which would have gone to her shall go to his parents."
This same language appearing as section 2437, Revision of 1860, had been construed in the case of McMenomy v. McMenomy,22 Iowa, 148, decided in 1867, to the following effect, according to the two paragraphs of the syllabus to that opinion, to wit:
"Section 2437, Rev. of 1860, which provides that if any one of the intestate's children be dead, the heirs of such child shall inherit his share in the same manner as though such child had outlived the parent, does not authorize the widow of a deceased husband to inherit from their child who died before the death of the husband.
"While the use of the word `heir' is not technically limited to children, yet it was not intended by its use to embrace the widowed mother of a child that died before the death of the father."
In Journell v. Leighton, 49 Iowa, 601, decided in 1878, and prior to our adoption, it had been held, as expressed in the syllabus to that opinion, as follows: "Section 2454 of the Code does not authorize the widow to inherit *Page 388 
from the children of her child who died before the death of her husband. Following McMenomy v. McMenomy, 22 Iowa, 148."
In Will of Overdieck, 50 Iowa, 244, and prior to our adoption of this statute, the court had before it the construction of section 2337 of the Iowa Code relating to wills, reading as follows: "If a devisee die before the testator, his heirs shall inherit the amount so devised to him, unless, from the terms of the will, a contrary intent is manifest."
The court, referring to its two decisions above mentioned construing the statute of descent and distribution, held as expressed in the syllabus that: "The widow of a deceased husband will not inherit from the child who died before the death of the husband."
In 1882, in Leonard v. Lining, 57 Iowa, 648, 11 N.W. 623, the Supreme Court of Iowa held, as indicated by the syllabus in that case: "Where a child survived his father, but died without issue before the death of his grandfather, from whom the property was derived, it was held that he never had any vested estate in the property, and that his mother, surviving, would take nothing by descent. Parents succeed only to the estate which the child has at the time of his death."
All of the foregoing decisions antedate our adoption of the Iowa statute and abundantly sustain the construction we here give to subsection 1412 (now 38-108 of the 1929 Comp. St.). There are some decisions subsequent to our adoption which are very helpful. In Schultz v. Schultz, 183 Iowa, 920, 167 N.W. 674, the Iowa Supreme Court held as stated in the syllabus: "A widow is not an `heir' of her deceased husband, within the meaning of section 3378, Code 1897, which provides that property which cannot descend to the son of an intestate because of the prior death of the son, shall descend to the heirs of such predeceased son."
In Murphy v. Murphy, 190 Iowa, 874, 179 N.W. 530, the same court, as shown by two separate paragraphs of the syllabus, held:
"A husband, on the death of his wife, ceases to sustain any legal relation to the surviving parents of the wife. In other words, the husband is not one of the `heirs' of his wife. Section 3378, Code 1897.
"Necessarily there is no room for the creation of a fiction — an assumption of a nonexisting fact — as a basis for casting descent, when the statute specifically casts the descent. So held where a wife predeceased her father, and the court was asked, in order to cast a descent to the husband, to entertain the fiction that she lived until after the father died."
Not only on reason, but on abundant precedent laid down for us by the highest court of the state from which we adopted the statute under consideration, we are lead inescapably to the conclusion that the construction contended for by appellant is the correct one. It is the one which we adopted in appropriating the Iowa statute.
The appellee was the heir of Soledad at the time of her death. The marriage tie was severed with her death, and we cannot invoke a fiction of resurrection to cast descent, when the law itself apparently contemplated *Page 389 
such resurrection only to cast descent to the direct heirs of Soledad.
This view is sound in reason, supported by precedent, and in furtherance of justice.
For the reasons given, we must necessarily conclude that the appellee is not an heir within the meaning of section 38-108 and is not entitled to inherit the share Soledad V. de Ortiz, the deceased daughter of Francisco Vigil, the intestate, would have inherited had she outlived her father.
The judgment of the district court will be reversed, and the cause remanded.
It is so ordered.
WATSON, C.J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.