362 P.2d 771

**Joe A. MONTOYA, Petitioner,**

**v.**

**John B. McMANUS, Jr., District Judge, Division One, Second Judicial District of the State of New Mexico, Respondent.**

No. 6933.

Supreme Court of New Mexico.

May 10, 1961.

Rehearing Denied June 9, 1961.

The writ relates to the actions of the respondent in an election contest instituted in that court by the petitioner against Tom Bolack who was the successful candidate for Lieutenant Governor of New Mexico in the November, 1960 election. Answers to the writ were filed by the respondent and by Tom Bolack who asserted that he is the real party in interest. The answers plead identical defenses and the same attorneys represent both answering parties. No additional reference need be made to Tom Bolack as a party to these proceedings.

The pleadings in this action disclose that the election contest is at issue but no testimony has been taken and there is now pending therein a motion to dismiss filed by the contestee on March 2, 1961. That motion is grounded on the failure of the contestant, Montoya, to comply with a ruling made by the respondent on February 21, 1961, to the effect that the contestant and contestee should each, by March 14, 1961, file a bond in the amount of $25,000, "said bond to be of the commercial surety type." In making this ruling the respondent relied upon the provisions of § 3–9–10, N.M.S.A.1953.

The filing of the motion to dismiss prior to March 14, 1961, was due to the filing by the contestant on February 24, 1961, of an affidavit in which he made oath that "he is too poor to obtain such a bond," and that "he is too poor to pay the costs of the above-entitled and numbered cause."

Bigbee & Stephenson, Santiago E. Campos, Sante Fe, for petitioner.

A. T. Hannett, Albuquerque, M. W. Hamilton, Robert E. Fox, Santa Fe, for respondent and Tom Bolack.

GEORGE L. REESE, District Judge.

On the petition of Joe A. Montoya we issued our alternative writ of prohibition and mandamus directed to the respondent, John B. McManus, Jr., District Judge, Second Judicial District, Bernalillo County.

384

After the filing of the poverty affidavit, a hearing before the respondent occurred on March 11, 1961, relating to the legal effect of such affidavit on the requirements of § 3–9–10, N.M.S.A.1953. During said hearing petitioner presented to the respondent an instrument entitled in the contest and designated "Cost Bond." This instrument omitting the title is in words and figures as follows:

"COST BOND

KNOW ALL MEN BY THESE PRESENTS:

That I, Joe A. Montoya, Contestant above named, am held and firmly bound unto the STATE OF NEW MEXICO in a sum equal to the amount of all costs that may be adjudged against me, for the payment of which well and truly to be made I bind myself, my heirs, executors, administrators firmly by these presents.

Sealed with my seal and dated this 10th day of March, 1961.

The condition of the foregoing obligation is such that whereas I am Contestant in the above-entitled and numbered cause which is pending in the above specified Court which said cause is an election contest.

Now, if I shall pay all costs that may be lawfully adjudged against me in the aforesaid cause, then this obligation shall be null and void; otherwise to remain in full force and effect.

/s/ Joe A. Montoya      (L.S.)
Joe A. Montoya

Subscribed and sworn to before me this 10th day of March, 1961.

/s/ Mary E. Suman
Notary Public

My commission expires:
July 23, 1961."

The respondent, by letter opinion dated March 13, 1961, ruled that the tendered bond "is inconsistent with the contestant's pauper's affidavit and, further, is not the type bond contemplated by the Court, and therefore, it will not be approved." In the same opinion the respondent ruled that an election contest is a special proceeding and that the pauper's oath statute, § 25–1–14, N.M.S.A.1953, is not applicable thereto.

Respondent admits that unless otherwise directed by this court he will enter a formal order requiring petitioner to file a $25,000 commercial surety type bond and will refuse to proceed further in the hearing or determining of the contest proceeding unless the petitioner files such bond.

We issued our alternative writ commanding the respondent to desist and refrain from entering an order requiring the petitioner to furnish and file a bond in the amount of $25,000 of commercial surety type, and further commanding the respondent to expeditiously proceed to hear and de-

termine the issues in the contest case without first requiring petitioner to file any bond whatever, or, alternatively, to expeditiously proceed to hear and determine said cause upon petitioner filing a bond substantially in the form theretofore tendered to respondent on March 11, 1961, or that he show cause why the writ should not be made permanent.

The first point argued by petitioner in support of the writ is that his "too poor" affidavit relieves him from the cost bond requirements of the election contest law.

The statute relied upon by petitioner is compiled as § 25–1–14, N.M.S.A.1953, and reads as follows:

"If any person wishing to institute a suit, or having done so, shall make oath that he is too poor to pay the costs, he shall have all and any process of the court free of costs."

This statute has been a part of the procedural law of New Mexico since its enactment in 1851, but it has seldom been mentioned in our opinions.

The territorial supreme court in the case of Bearup v. Coffey, 9 N.M. 500, 55 P. 289, considered this section and other sections of the then Code of Civil Procedure as evincing a clear legislative intent, "that the courts of justice shall be open to every person, rich or poor, who has suffered a legal injury to his lands, goods, person or reputation."

With this purpose of the statute in mind we say that one claiming to have won an elective office and seeking to overturn the decision of the election officials to the contrary does not thereby demonstrate that he has suffered "a legal injury to his lands, goods, person, or reputation."

■ The right to hold office is not a property right nor is it a vested one. State ex rel. Ulrick v. Sanchez, 32 N.M. 265, 255 P. 1077; Reese v. Dempsey, 48 N.M. 417, 152 P.2d 157.

■ Furthermore an election contest is a special proceeding unknown to the common law. Vigil v. Pradt, 5 N.M. 161, 20 P. 795; Gonzales v. Gallegos, 10 N.M. 372, 62 P. 1103; Crist v. Abbott, 22 N.M. 417, 163 P. 1085; and its provisions must be strictly followed, Gallagher v. Linwood, 30 N.M. 211, 231 P. 627, 37 A.L.R. 664. A contestant has a right to contest only in the manner and to the extent provided in the election contest statutes. State ex rel. Abercrombie v. District Court, 37 N.M. 407, 24 P.2d 265; Montoya v. Gurule, 39 N.M. 42, 38 P.2d 1118; State ex rel. Denton v. Vinyard, 55 N.M. 205, 230 P.2d 238.

Prior to the adoption of our rules of civil procedure for the district courts, none of the rules of procedure applicable in civil actions were applicable to an election contest. Hannett v. Mowrer, 32 N.M. 231, 255 P. 636; Bryan v. Barnett, 35 N.M. 207, 292 P. 611.

Under the express language of Rule 1, § 21-1-1(1), N.M.S.A.1953, declaring the scope of our rules of civil procedure for district courts, special statutory proceedings are excluded from their operation where existing rules of procedure applicable thereto are inconsistent with such general rules. Trujillo v. Trujillo, 52 N.M. 258, 197 P.2d 421, an election contest case.

The poverty statute is certainly inconsistent with the provisions of the election contest law relating to costs and expenses incident to a contest.

Section 3-9-10, N.M.S.A.1953, provides as follows:

"3-9-10. Trial — Testimony — Appointment of examiners.—All issues of law and fact shall be tried by the district judge, and it shall be his duty to hear and determine such issues without delay and as speedily as possible. Upon application of either party the court shall appoint examiners to take testimony in as many precincts or election districts as are specified in such application to the end that all testimony may be taken within three (3) months after cause is at issue. Unless the examiner is a competent stenographer the court shall appoint a competent stenographer to assist in taking such testimony, and the examiner may appoint an interpreter when necessary at compensation to be fixed by the court. In all cases where the testimony is taken by an examiner, such testimony shall be reduced to writing and reported to the court, and whether the testimony is taken before the court or an examiner, the stenographic notes shall be preserved until transcribed and the transcript settled as a bill of exceptions or certified for appeal. The court *shall, prior to the taking of any testimony, require the party in whose behalf such testimony is to be taken to make adequate deposit* or *furnish security to cover the costs* of taking testimony, including compensation and actual traveling expenses of examiners, stenographers and interpreters, and witness fees, and *shall require each party to furnish bond for the payment of all costs that may be adjudged against such party.*" (Italics supplied.)

The last paragraph of the quoted statute contains mandatory language leaving no room for the application of the poverty statute. The courts uniformly hold such language to be mandatory.

The cases cited in 18 Am.Jur., Elections, p. 385, § 322, fully support the text:

"A statutory requirement that a contestant give security for costs or that a candidate demanding a recount make a stated deposit or furnish security has generally been regarded as a jurisdictional prerequisite, making it impossi-

ble to hear the contest or conduct the recount in the event of noncompliance with such requirement."

We, by way of strong dicta, approved a similar statement of this general rule in State ex rel. Besse v. District Court, Fourth District, 31 N.M. 82, 239 P. 452. See, also, note 106 A.L.R. 928, at page 936.

The case of Bearup v. Coffey, supra, relied upon by petitioner, affords no support for his contention. That was a civil action of ejectment, brought for the protection of a property right, to-wit: the right of possession of real property. We were not dealing with a special statutory proceeding such as an election contest and there was no mandatory language in the applicable statutes prohibiting the taking of testimony in default of a cost deposit and a cost bond.

Petitioner also relies upon the case of Bailey v. Fly, 97 Tex. 425, 79 S.W. 299, 300. There the court held that a pauper's affidavit could be filed in lieu of a cost bond in an election contest, but the Texas statute merely provided that a cost bond could be required "as in civil cases." The inapplicability of this case is apparent.

Counsel for neither party has cited any other case dealing with the specific question under consideration and we have found none except Stafford v. Bailey, 282 Ky. 525, 138 S.W.2d 998. The Kentucky Court of Appeals, although not deciding the point involved herein, indicated in its opinion its clear disapproval of the trial court's action in permitting a contest to proceed in forma pauperis.

■ We conclude that § 25–1–14, N.M. S.A.1953, does not apply to an election contest.

We now consider petitioner's contention that the so-called cost bond tendered by him fulfills the requirements of the statute and that the respondent cannot legally impose upon the petitioner the requirement that he post a cost bond in the amount of $25,000 of commercial surety type.

■ We readily agree that the respondent erred in requiring a bond of "commercial surety type." The statute itself does not prescribe the particular type of bond which is to be furnished. It provides: "The court shall, prior to the taking of any testimony, * * * require each party to furnish bond for the payment of all costs that may be adjudged against such party." Conceding, for the moment, the power and duty of the court to require an adequate or sufficient bond, we feel bound by our decision in Sandoval v. Madrid, 35 N.M. 252, 294 P. 631, to hold that the respondent erred in limiting the bond to one of "commercial surety type." In that case we held that a bond with personal sureties complied with § 3–9–19, N.M.S.A.1953, requiring "a sufficient surety bond," as a condition of a recount. The expression "of commercial

surety type" means substantially the same as "corporate surety type" and to require such a bond is going beyond the legislative fiat.

This holding disposes of only a small part of petitioner's contention now under discussion. His further contention is that his personal undertaking to pay all costs that may be adjudged against him is all that can be required of him in the way of a cost bond. His argument is that the legislature in § 3-9-15, N.M.S.A.1953, provided for the filing of a bond with the State Canvassing Board as a condition for a recount and described the bond as "a sufficient surety bond," and that the same legislature in § 3-9-19, N.M.S.A.1953, as a condition for a county recount provided for the filing of a bond and described the bond as "a sufficient surety bond." This description of the bond in these two sections and the omission of the same or similar description of the cost bond referred to in § 3-9-10, supra, is thought by petitioner to impel a holding that the legislature intended to require nothing more in the way of a bond than a written promise to pay.

A written promise to pay all costs that may be adjudged against the promisor in an election contest proceeding would not, so far as we are advised, add anything to the benefits or burdens of either party because of the provisions of § 3-9-11, N.M.S.A. 1953.

This section reads:

"Judgment shall be rendered in favor of the party for whom a majority of the legal votes shall be proved to have been cast, and shall be to the effect that he is entitled to the office in controversy with all the privileges, power and emoluments belonging thereto, *and for his costs,* and if the contestant prevails he shall have judgment placing him in possession of said office and for the emoluments thereof from the beginning of the term for which he was elected, *with his costs."* (Italics supplied).

We will not presume that the legislature intended to require a useless act by requiring a cost bond which carries no obligation other than that of the party to the proceeding.

■ Canons and rules relating to the construction of statutes are but aids in determining legislative intent. Atchison T. & S. F. Ry. Co. v. Town of Silver City, 40 N.M. 305, 59 P.2d 351; Janney v. Fullroe, Inc., 47 N.M. 423, 144 P.2d 145.

■ The chief aim of statutory construction is to arrive at true legislative intent. State v. Southern Pac. Co., 34 N.M. 306, 281 P. 29; Janney v. Fullroe, Inc., supra.

■ Legislative intent is to be determined primarily by the language of the act, and resort may be had to construction only in case of ambiguity. De Graftenreid v. Strong, 28 N.M. 91, 206 P. 694; George v. Miller & Smith, Inc., 54 N.M. 210, 219 P.2d 285.

Petitioner suggests that since he construes the word "bond" as used in § 3–9–10, supra, to mean a mere promise to pay signed solely by the party and the respondent construed it to mean a bond "of the commercial surety type," there is an indication of ambiguity. If we, for the purpose of argument, concede ambiguity then the following rules of construction are applicable.

■ An interpretation of a statute will never be adopted which will render the application thereof absurd or unreasonable. Nye v. Board of Commissioners of Eddy County, 36 N.M. 169, 9 P.2d 1023; Hahn v. Sorgen, 50 N.M. 83, 171 P.2d 308.

■■ In construing statutes, the intent of the legislature must be given effect, and in ascertaining intended purpose the court will not be bound by a strict interpretation of the letter of a statute if such strict interpretation will defeat the intended object. In re Vigil's Estate, 38 N.M. 383, 34 P.2d 667, 93 A.L.R. 1506.

■ Where the language of a statute is doubtful, or an adherence to the strict letter would lead to injustice, absurdity or contradiction, the statute will be construed according to its spirit or reason, even though this necessitates the rejection of words and the substitution of others. Ex parte De Vore, 18 N.M. 246, 136 P. 47; State v. Southern Pac. Co., supra.

■ Words will not be added to a statute except when necessary to make the statute conform to the obvious intent of the legislature, or to prevent the statute from being absurd. Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407.

It would be pure speculation for us to attempt to specify the reason, if any, which motivated the legislature in providing for a "surety bond" as a condition for a recount and in providing in an election contest that the court shall require each party to furnish "bond" for the payment of all costs that may be adjudged against such party. It can, however, be safely asserted that, when the legislative act is read as a whole, there is nothing to suggest that the legislature intended the construction contended for by petitioner.

It can also safely be asserted that the bond in the election contest proceeding was designed and intended by the legislature to afford *security* for the payment of costs which might be adjudged against the obligor in the bond. The bond was designed as a protection to the opposite party

to *secure* him in the collection of any judgment for costs which he might recover.

The word "bond" in the context of the statute is synonymous with security. Login Corporation v. Botner, D.C.N.D.Cal. 1947, 74 F.Supp. 133, 134.

In order that the clear legislative intent be carried out it is not necessary that we add the word "surety" or that we substitute the word "security" for the word "bond," although we would be authorized so to do under the rules announced in Moruzzi v. Federal Life & Casualty Co., supra, Ex parte De Vore, supra, and State v. Southern Pac. Co., supra. To say that a mere written promise to pay was all that the legislature intended borders on absurdity, particularly when read in connection with § 3–9–11, supra. To say the least, unless a bond affording security was intended, the requirement of any bond at all was superfluous and we should not conclude that the legislature was so thoughtless as to have intended such a result.

Counsel have cited no case dealing with a contention like that under discussion and we have found none other than Login Corporation v. Botner, supra. The act of Congress there involved provided for the perfection of an appeal by notice and the giving of a "bond." Concerning the contention of the appellant that his common law bond was sufficient, the court said:

"It is obvious from the language of the statute that the bond therein referred to is a supersedeas, its purpose being to stay the hand of the Secretary of Agriculture. It is true that at common law a bond was a solemn instrument in writing between the obligor and obligee usually under seal. By its formal sealing it was distinguished from other more simple promises. However, that Congress in using the word 'bond' in this statute was intending to require an agreement in the nature of the old common law obligation borders upon absurdity. Certainly the framers of the statute did not intend to require a party appealing from a reparation order of the Secretary of Agriculture to the District Court to subscribe to a solemn promise to be bound by the judgment of the court which, in any event, would bind the appellant upon its rendition. To attribute to Congress such an intention would be to fly in the face of orthodox canons of statutory construction.

\*    \*    \*    \*    \*    \*

"The term 'bond' is commonly used in judicial procedure in connection with the giving of security for a stay of proceedings upon appeal or otherwise. In that sense only is its use in this statute understandable or effective."

We approve the language above quoted and hold that the "bond" for the payment of costs required by § 3–9–10, supra, must be such a bond as affords security for the payment of costs.

We turn now to the petitioner's contention that the respondent acted in an arbitrary and capricious manner in requiring cost bonds in the amount of $25,000. It is apparent that respondent did not follow the procedure prescribed by the statute, § 3–9–10, supra, but from what has been presented to us it also seems apparent that this resulted from the interpretation placed thereon by the parties.

The statute requires that *prior* to the taking of *any* testimony the court shall require the party in whose behalf testimony is to be taken to deposit cash or security in an amount sufficient to cover the estimated costs of taking such testimony. These costs include witness fees, and their mileage; and if examiners, stenographers and interpreters are to be appointed, their compensation and traveling expenses are included. Some sort of a hearing is obviously necessary to the end that the trial court may reasonably estimate these costs and require the proper deposit to be made.

When the costs of taking the contestant's testimony are ascertained and the required deposit is made to cover same, the statute commands that the court require the contestee to furnish bond to cover these costs.

The costs advanced and paid by the contestant are the only costs "which may be adjudged" against the contestee, and thus the amount of his bond is to be determined by the advance costs required of the contestant. And, so it is, with the contestee, should he offer testimony. He must, prior to the taking of his testimony, make the required cost deposit, whereupon the contestant must furnish his bond to cover these costs "which may be adjudged" against him.

The purpose of the statutory requirement for advance payment of costs is made evident when we consider the number of witnesses which may be involved and the other expenses incident to the taking of their testimony and note that in a recount proceeding the sheriff and election officials must individually prosecute their claims for fees against the principal and sureties on the bond filed as a condition for a recount. State v. Barker, 51 N.M. 51, 178 P.2d 401.

Although we anticipate that questions may arise concerning the procedure to be followed in the contest we do not feel called upon to attempt to anticipate and answer them in advance or to give an advisory opinion. For the purpose of the parties in the proceedings before us, it should be sufficient to point out that in our view § 3–9–10 requires "adequate deposit" or "security" for the purposes therein stated and

a bond from the opposite party to secure the payment to the successful party of the costs advanced and paid by him. It would seem that orderly procedure would dictate that this be done in the first instance before starting testimony on behalf of the contestant and then again before starting testimony on behalf of the contestee. If contestant does not succeed in making a prima facie case the second step would never be reached. We will not anticipate the effect of failure of either of the parties to make the deposit, or give security, or to furnish bond for costs. This we will decide if and when the question is presented to us after a determination by the trial court.

▮▮▮ We have concluded that the respondent erred in requiring that the parties each file a cost bond of the commercial surety type in the amount of $25,000, but the question remains as to whether we should, in this proceeding, take any action to correct this error. It seems obvious to us that in view of the right of appeal afforded by § 3–9–12, N.M.S.A.1953, we may not employ the jurisdiction reposed in us to issue writs of prohibition and mandamus in aid of our appellate jurisdiction. State ex rel. Transcontinental Bus Service v. Carmody, 53 N.M. 367, 208 P.2d 1073; State ex rel. Oil Conservation Commission v. Brand, 65 N.M. 384, 338 P.2d 113.

So, we come to the question as to whether this is a proper case for the use by us of the power of superintending control vested in the supreme court by N.M.Const. art. VI, § 3. The historical basis of this jurisdiction and the general principles governing its use are well and exhaustively discussed in Albuquerque Gas & Electric Co. v. Curtis, 43 N.M. 234, 89 P.2d 615; in State ex rel. Transcontinental Bus Service v. Carmody, supra; and in State ex rel. Oil Conservation Commission v. Brand, supra.

It is significant that in only two cases, since statehood, have we employed the power of superintending control. State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376; State ex rel. Transcontinental Bus Service v. Carmody, supra.

▮▮▮ In the case last mentioned we announced that this power may be exercised in cases (1) where the remedy by appeal seems wholly inadequate, and (2) where the use of the power is necessary to prevent irreparable mischief, great, extraordinary or exceptional hardship, costly delays and unusual burdens of expense.

▮▮▮ If the order complained of were to be entered, erroneously as we here hold, an appeal therefrom would result in such a delay as to almost entirely negative the legislative policy of speedy disposition of election contests. The basic questions at issue involving the right to vote of large segments of our population would remain undetermined unless the case is at least allowed to proceed beyond its present initial

stage. Thus the facts and circumstances of this case, as distinguished from the ordinary election contest, involving more appealable issues, lead us to conclude that we should exercise our power of superintending control. We in nowise intend, however, to imply any departure from the general doctrine stated in State ex rel. Oil Conservation Commission v. Brand, supra.

Our alternative writ prohibiting the respondent from entering an order requiring cost bonds "of the commercial surety type" is made permanent. Said alternative writ is modified so as to prohibit respondent from requiring a cost bond from either party in the amount of $25,000, or any other amount, unless after an appropriate hearing the amount fixed is found to be necessary to secure costs advanced or secured by the opposite party as a condition of taking such opposite party's testimony, and as so modified the writ is made permanent.

Our alternative writ of mandamus was improvidently issued and it is dissolved.

There appears to be no necessity that any directions be given the respondent other than that he proceed in accordance with this opinion, and it is so ordered.

CARMODY, CHAVEZ, MOISE and NOBLE, JJ., concur.

On Motion for Rehearing

PER CURIAM.

Respondent, on rehearing, among other things, insists that the trial court held the necessary hearings prior to fixing the bond in the sum of $25,000.

However, it is apparent from the record that hearings were not held for the purposes required by the opinion. Furthermore, the record is silent as to what occurred at such hearings. The hearings required in each instance shall be of record and sufficient to enable the trial court to judicially determine the amount of deposit or security to be furnished by the party at that stage of the proceeding. The amount of such deposit or security required determines the amount of the cost bond to be furnished by the opposite party.

In all other respects, the motion for rehearing is denied, and the decision of the court as amplified hereby shall be effective forthwith.