O'BRIEN, C. J., and SEEDS, J., concur; FREEMAN, J., being absent.

---

[No. 506.  On Rehearing, February 27, 1893.]

ANTONIO CORTESY, PLAINTIFF IN ERROR, V. TERRITORY OF NEW MEXICO, DEFENDANT IN ERROR.

SELLING LIQUORS ON SUNDAY—CONSTRUCTION OF STATUTES.—Any person selling liquors on Sunday is engaged "in labor" within the meaning of chapter 24, Laws, 1887, amending section 933, Compiled Laws, 1884, notwithstanding the omission of the words, "selling * * * or liquors, or any other kind of property," in the amended act, and leaving in that act the words, "or engaged in any labor, except works of necessity, charity, or mercy." There is no sufficient reason for holding that the legislature intended, by omitting a clause, to enact affirmatively the thing which the clause had prohibited.

ERROR, from a judgment convicting defendant of selling liquors on Sunday, to the Fifth Judicial District Court, Socorro County. Motion for rehearing overruled, O'BRIEN, C. J., dissenting.

The court states the case on the rehearing.

SUMMERS BURKHART and NEILL B. FIELD for plaintiff in error.

EDWARD L. BARTLETT, solicitor general, for the territory.

LEE, J.—The statute for the observance of the Sabbath, prior to the amendment of 1887, provided that "any person or persons who should be found on the first day of the week, called Sunday, engaged in any games, or sport, or horse racing, cock fighting, dancing, or in any other manner disturbing any worshiping assembly or private family, or in buying or selling goods, wares, or merchandise, chattels, or liquors, or any other kind of property, * * * or engaged in any labor, except works of necessity, charity, or mercy, shall be," etc., which provisions were subject to a proviso that it did not apply to ferryboats, livery stables, hotels, restaurants, and that butchers and bakers were allowed to keep their establishments open, to sell meat and bread, but not to sell liquor or other merchandise, and apothecaries to sell drugs and medicines, surgical instruments and medical apparatus, but not other articles. In 1887 the act was amended by striking out the words, "or in buying or selling any goods, wares, or merchandise, or any other kind of property," and also the proviso, and leaving the act now in force as follows: "Section 1. That section 933 of the Revised Statutes of the year 1884 be, and the same is hereby, amended to read as follows: Any person or persons who shall be found on the first day of the week, called Sunday, engaged in any sports, or in horse racing, cock fighting, or in any other manner disturbing any worshiping assembly or private family, or attending any public meeting or public exhibition, except for religious worship or instruction, or engaged in any labor, except works of necessity, charity, or mercy, shall be punished by a fine not exceeding fifteen dollars, nor less than five dollars, or imprisonment in the county jail for not more than fifteen days, nor less than five days, in the

discretion of the court, upon conviction before any district court.   Sec. 2.   All fines collected under this act to be applied to the school funds of the district in which the offense is committed.   It shall be the duty of any sheriff collecting said fine to pay the same to the county treasurer, to the credit of the school district of the county in which the said offense was committed, within thirty days after collecting said fine, and take his receipt therefor.   Sec. 3.   All acts, or parts of acts, in conflict herewith are now hereby repealed.   Sec. 4.   This act to take effect, and be in force, from and after its passage."

It is contended on behalf of the plantiff in error that the legislature, by omitting and leaving out of the amendment the words, "or in buying or selling any goods, wares, or merchandise, chattels, or liquors, or any other kind of property," thereby this class of business or labor is not to be included, or intended to be included, in the words, "or engaged in any labor, except works of necessity, charity, or mercy," which remain in the act as amended; and counsel rely upon the case of Reiche v. Smythe, Collector, 13 Wall. 162, as authority in point.   That case is one which arose under the revenue laws.   An act of 1861 exempted from duty animals of all kinds; birds, singing or other; and land and water fowl; and afterward, in 1866, an act was passed which levied a duty of twenty per cent on all horses, mules, cattle, sheep, hogs, and other living animals; and it was held in that case that birds were not included in the term, "other living animals," used in the later act, for the reason that congress had used the term "animals" in the former and earlier act in a restricted sense, distinct from "birds;" the court holding that the later act referred to animals as a class, and, therefore, it was not antagonistic to the former, so far as birds were concerned, and did not repeal it by impli-

SELLING liquors on Sunday; construction of statutes.

·cation. Both acts remained in full force, so far as the later did not conflict with the earlier, and are in pari materia, and were so construed by the court. It was to be determined in that case how far the later act was repugnant to the earlier, and the court found that the later one only included domestic quadrupeds, and that all other animals, not ejusdem generis with horses, mules, cattle, sheep, and hogs, were exempt under the first act, which was still in force. In the case under consideration the same questions are not involved, and the principles applicable to it are entirely different. In this case the court is not called upon to reconcile the meaning of two conflicting statutes, but to construe an amendment wherein it is provided, "to read as follows," repealing all acts and parts of acts in conflict with it; and as was said in Steamship Co. v. Joliffe, 2 Wall. 458, the new act took effect simultaneously with the repeal of the old act. Its provisions may, therefore, more properly be said to be substituted in the place of, and to continue in force, with modifications, the provisions of the original act, rather than to have abrogated and annulled them. As stated in Sutherland on Statutory Construction: "The amendment was practically a revision of the act. A revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a corrected or improved form. The restatement may be with or without material change. A revision is intended to take the place of the law as previously formulated. By adopting it, the legislature say the same thing, in effect, as when a particular section is amended by the words, 'so as to read as follows.' The revision is a substitute. It displaces and repeals the former law, as it stood, relating to the subject within its purview. Whatever of the old law is restated in the revised act is continued in operation, as it may operate in the connection in which it is re-enacted." It has been held in a great number of

cases that where a provision in an act is amended by the form, "to read as follows," the intention is manifest to make the provision following a substitute for the old provision, and to operate exclusively in its place; that it is intended to prescribe the only rule to govern. U. S. v. Barr, 4 Sawy. 254; U. S. v. Tynen, 11 Wall. 95; Knox v. Baldwin, 80 N. Y. 610; Goodno v. Oshkosh, 31 Wis. 127; Suth. St. Const., sec. 155. And it has been said the best rule by which to arrive at the meaning and intention of a law is to abide by the words which the lawmaker has used. U. S. v. Warner, 4 McLean, 463; U. S. v. Bright, 5 McLean, 178. An alteration in the phraseology, or the omission or addition of words, in the revision of a statute, does not necessarily alter the construction of an act, or imply an intention to do so. Croswell v. Crane, 7 Barb. 191. As expressed by Endlich on the Interpretation of Statutes (section 378): "The presumption of a change of intention from a change of language, of no great weight in the construction of any documents, seems entitled to less weight in the construction of statutes than in any other case; for the variation is often to be accounted for, not only by mere desire of improving the graces of style, and of avoiding the repeated use of the same words, but from the circumstances that acts are often compiled from different sources; further, from the alterations and additions from various hands which they undergo in their progress through parliament." * * * "It has been seen that the changing of language in the later of two statutes on the same subject has sometimes the effect of repealing the earlier provision by implication; but in those cases the change was too significant of a changed intention to save the earlier act even from the form of a repeal, which is not favored in judicial interpretation. * * * The change would make no difference in the sense, when the omitted words of the

earlier enactment were unnecessary.'' It is only when ''an omission in the later act of words used in the earlier one, and not supplied by any natural sense of words employed.'' Even when the omitted words were material to the sense, but might be implied, the omission would not, in itself, be considered material. As was held in the case of Ford v. Ford, 143 Mass. 577, where an act permitting divorce on the ground of desertion required that the desertion be without the consent of the party deserted, and a later act omitted those words, that they were implied in the phrase ''deserted.'' But the second act will not operate as a repeal merely because it may repeat some of the provisions of the first one, and omit others, or add new provisions. Barnard v. District of Columbia, 127 U. S. 406.

Therefore, the presumption does not arise that the legislature intended to repeal the offense expressed in those words, but intended that the offense expressed by them should continue, as modified by the language used in the amended act. Nor do I think the rule contended for, that, for the purposes of ascertaining the legislative intent, repealed statutes are in pari materia with a statute in force. We do not think that the weight of authority ever went to that extent. We find it thus laid down: ''But an act of parliament, when repealed, must be considered as if it never existed. A doubt has been felt how a subsequent statute can be taken to be incorporated with such an act, not in esse or in fuisse, and if the act, not a subsisting act, may be referred to to assist in the construction of another act upon the same subject, yet how can an act that is supposed to never have existed be said to be in pari materia with any other act. The theory was denominated by Lord MANSFIELD as 'shocking.''' Potter, Dwar. St., p. 191. But, whatever the rule may have been in different cases, they have all been subject to the

following, which is clearly applicable to this: "Where the last statute is complete in itself, and intended to prescribe the only rule to be observed, it will not be modified by the displaced legislation, as laws in pari materia." Suth. St. Const., sec. 286. And this rule applied where the repeal was by implication only. But where there has been an amendment to an act expressed "to read as follows," with the repealing clause of all laws and parts of laws in conflict with it, yet that the former or repealed act should be construed by the court to still be incorporated into the amended act so as to modify, limit, or restrict the plain meaning of the language used by the lawmakers, so as to make it a repealing statute, I do not find supported by the authorities. On the contrary, amendatory acts should not receive a forced construction to make them repealing statutes. Lucas Co. v. Chicago, B. & Q. R'y Co., 67 Iowa, 541. In the case of U. S. v. Bowen, 100 U. S. 508, it is said: "The Revised Statutes must be treated as the legislative declaration of the statute laws on the subject which they embrace. When the meaning is plain, courts can not look to statutes which have been revised to see whether congress erred in the revision. * * * But, when it becomes necessary to construe language in the revision which leaves a substantial doubt as to its meaning, the original statute may be resorted to for the purpose of ascertaining that meaning." Some of the law writers have referred to this decision as laying down a rule of construction peculiar to that which is to be applied to the construction of the United States Revised Statutes. But in the case of Myer v. Car Co., 102 U. S. 1, that court, in an opinion by Chief Justice WAITE, affirmed the rule, saying it was applicable in the construction of the statutes of Iowa. It therefore becomes a rule of construction of statutes generally by that court, which is an authority binding upon us.

Therefore the act of the legislature, as revised and amended by them, must be accepted as the law upon the subject embraced within it at the time the amended or revised act went into force; and we can only look to the repealed act to interpret anything in which there is a substantial doubt as to the meaning of the language used. It there is any doubt as to the language of the act, it is as to whether selling of liquor is intended to be included in the term of "any labor." By recurring to the original, we find it was specifically included in the act, and that intention must be carried into the amended act, unless it should clearly appear that the legislature intended the contrary; the law being thus stated by Sedgwick, St. & Const. Law, 365: "So upon a revision of statutes, a different interpretation is not to be given to them, without some substantial change of phraseology,—some change other than what may have been necessary to abbreviate the form of the law." The supreme court of the United States has held to the same effect. Pennock v. Dialogue, 2 Pet. 1; McDonald v. Hovey, 100 U. S. 619. Vattel's first general maxim of interpretation is that " it is not allowable to interpret what has no need of interpretation" and continues: "When a deed is worded in clear and precise terms,—when its meaning is evident, and leads to no absurd conclusion, —there can be no reason for refusing to admit the meaning which such deed naturally presents. To go elsewhere in search of conjectures, in order to restrict or enlarge it, is but to elude it." Vatt. Law Nat. 244; Ruggles v. Illinois, 108 U. S. 534.

The language used in the act under consideration is not obscure or uncertain. It has been literally adopted in some of the states, and substantially in many. It has received judicial construction, and a court would not be at a loss to ascertain its meaning. But, if there

is a question in regard to it, courts are to gather the
intention of the legislature from the entire act; and, in
interpreting the section of the statute which remains in
force, resort may be had to a proviso to it, although
the proviso be repealed, and the clause which has been
repealed may still be considered in construing provi-
sions which remain in force. Savings Bank v. Collector,
3 Wall. 495; U. S. v. Crow Dog, 109 U. S. 556. In
referring to the clause, "or in buying or selling any
goods, wares, or merchandise, chattels, or liquors, or
any other kind of property," which was omitted in the
amendment, we find it was not subject to the exception
of "necessity, charity, or mercy," clause, as was that
of "or engaged in any labor" clause; the only excep-
tion being in the proviso, which in none of its provi-
sions applies to the merchant selling general merchan-
dise, including liquors, however great the necessity
might exist for it. Courts are permitted to recur to
the history of the times and condition of the country
to ascertain the reasons for, and the meaning of, pro-
visions and statutes. U. S. v. Union Pac. R'y Co., 91
U. S. 243; Union Pac. R'y Co. v. U. S., 99 U. S. 48.
It is therefore proper for the court to take under con-
sideration the vastness of the domain of the territory,
and the fact that, owing to its arid condition, settle-
ments are far removed from each other, and from
central points, and that, from necessity, a large portion
of the population are dependent on the country mer-
chant for all classes and kinds of goods which they may
find it necessary to buy. Yet under the provisions of
the act, as it existed before the amendment, the mer-
chant could not sell them on Sunday graveclothes to
bury their dead, or a pint of brandy, if one were sick
or hurt, and a life was dependent upon it, without
being guilty of a violation of the letter of the statute.
In this respect we find ample and sufficient reason why
the act should have been amended, and this class of

business put under the same exception as others. It is the language of the amended act which the court is called upon to construe; and, if the offense charged is found to be embraced in it, then it is immaterial what connection certain words may have had with other words in the repealed·act, other than they may be resorted to to interpret their meaning when it is not clearly expressed.

The words used in the amended act are, "or engaged in any labor, except of necessity, charity, or . mercy." It has been claimed that the business of merchandising or selling liquor is not labor within the meaning of the statute, and therefore does not constitute an offense, under the terms of the act. It is true that "labor," "business," and "work" are not synonyms. Yet labor may be business, but business is not always labor. It has frequently been held by different courts, both in England and America, that such business constitutes labor, within the meaning of the Sunday act. Thus, in Bloom v. Richards, 2 Ohio St. 402, it is held: "To wait upon customers, and receive and sell his wares, is the common labor of a merchant." In Pattee v. Greely, 13 Metc. (Mass.) 284, it is said: "The intention of the legislature, by this statute, was to prohibit secular business on the Sabbath; and this prohibition is not confined to work, in a sense of strict manual labor." We might refer to other authorities, but do not think it is necessary. They are sufficiently numerous to raise the presumption that the legislature acted upon the construction thus given to the words "any labor" at the time of passing the amendment in question.

It is held that words used in a previous act have acquired, through judicial interpretation, a definite meaning, and, when used in a subsequent act, will be presumed to be used in the same sense. The Abbotsford, 98 U. S. 440. Therefore, the question before us

is whether the omission of the words, "or buying or
selling any goods, wares, merchandise, chattels, or
liquors," in the amended act, and leaving in that act
the words, "or engaged in any labor, except works of
necessity, charity, or mercy," had the effect to repeal
the act as an offense for selling of merchandise, liquors,
etc., on Sunday, and leaving it in force as to all other
kinds of business or labor.    We think what we have
said is sufficient to show that they do not work a repeal
by necessary implication, even if there had been no
repealing clause.    A meaning can be given to the leg-
islation in question, which the words will bear, which
is not unreasonable, or inconsistent with its scope and
apparent purposes, whereby the amended act may be
read, construed, and interpreted according to its letter
without any restricted meaning being attached to it by
reason of the former act.    Implied repeals are not
favored, and where they exist the implication must
be necessary.    There must be a positive repugnance
between the new and the old.    Wood v. U. S., 16 Pet.
342; Daviess v. Fairbairn, 3 How. 36; U. S. v. Tynen,
11 Wall. 88; State v. Stoll, 17 Wall. 427; Ex parte
Crow Dog, 109 U. S. 556.    In the last case here referred
to it is said:    "Where the words relied on are general
and inconclusive, and the fact that to hold that a stat-
ute repeals by implication a previous act which would
reverse a well settled policy of congress, justifies the
court in requiring a clear expression of the intention
of congress in the repealing act."    So, in this case,
if it were the intention of the legislature, by the amend-
ment of 1887, to repeal by implication the statute
making it an offense to sell goods, wares, merchandise,
and liquors on Sunday, which had long been in force
in the territory, and which up to the time of the amend-
ment had not even been subject to the exception of
"necessity, charity, or mercy," as other kinds of labor
had, and that thereafter this kind of business was to

be legalized on Sunday, and that the words, "engaged"
in any labor," were to have no application to that class
of business, the courts are justified in requiring a clear
expression of the intention of the legislature to that
effect.    This principle is more clearly expressed in
a case which we think is directly in point on the
question in controversy,—that of Murdock v. City
of Memphis, 20 Wall. 590,—in which case one of the
questions involved was whether the second section of
the act of February 5, 1867, repealed all or any part of
the twenty-fifth section of the act of 1789, commonly
called the "Judiciary Act," and in the decision the
court says:    "The act of 1867 has no repealing clause,
or any express words of repeal.    If there is any repeal,
therefore, it is one of implication.    The differences
between the two sections are of two classes, namely:
The change or substitution of a few words or phrases
in the latter for those used in the former, with very
slight, if any, change of meaning, and the omission in
the latter of two important provisions found in the
former.    It will be perceived by this statement that
there is no repeal by positive, new enactment inconsist-
ent in terms with the old law.    It is the words that
are wholly omitted in the new statute which constitute
the important feature in the question thus propounded
for discussion.    A careful comparison of these two sec-
tions can leave no doubt that it was the intention of
congress, by the latter statute, to revise the entire mat-
ter to which they both had reference; to make such
changes in the law as it stood as they thought best;
and to substitute their will in that regard, entirely, for
the old law upon the subject.    We are of the opinion
that it was their intention to make a new law, so far as
the present law differed from the former, and that the
new law, embracing all that was intended to be pre-
served of the old law, omitting what was not so intended,
became complete in itself, and repealed all other laws

on the subject embraced within it.   The result of this
reasoning is that the twenty-fifth section of the act of
1789 is technically repealed, and that the second section
of the act of 1867 has taken its place.   What of the
statute of 1789 is embraced in that of 1867 is of course
the law now, and has been ever since it was first made
so.   What is changed or modified is the law, as thus
changed or modified.   That which is omitted ceased to
have any effect from the day that the substituted stat-
ute was approved.   * * *  What were the precise motives
which induced the omission of this clause, it is impossi-
ble to ascertain, with any degree of satisfaction.   In a
legislative body like congress, it is reasonable to sup-
pose that, among those who considered this matter at
all, there were varying reasons for consenting to the
change.   No doubt there were those who believed that
the constitution gave no right to the federal judiciary
to go beyond the line marked out by the omitted clause;
thought its presence or absence immaterial, and, in a
revision of the statute, it was wise to leave it out,
because its presence implied that such a power was
within the competency of congress to bestow.   There
were also, no doubt, those who believed that the sec-
tion standing without that clause did not confer the
power which it prohibited, and that it was therefore
better omitted.   It may also have been within the
thought of a few that all that is now claimed would
follow the repeal of the clause.   But, if congress or the
framers of the bill had a clear purpose to enact affirma-
tively that the court should consider the class of errors
which that clause forbid, nothing hindered that they
should say so, in positive terms; and in reversing the
policy of the government, from its foundation, in one
of the most important subjects upon which that body
could act, it is reasonable to be expected that congress
would use plain and unmistakable language in giving
expression to such intention.   There is, therefore, no

sufficient reason for holding that congress, by repealing or omitting this restrictive clause, intended to enact affirmatively the thing which the clause had prohibited.'' The conclusions thus reached in the above case are directly in point in the case under consideration. If the amended act, as changed and modified, became the law, as changed or modified, and that which was omitted ceased to have any effect from the day that the substituted act was approved, it is clear that the omitted words did not have the effect to make the amendment a repealing statute of the offense charged in the indictment, and it is equally clear, if as therein announced, that it is not sufficient reason for holding that the legislature, by omitting a clause, thereby intended to enact affirmatively the thing which the clause had prohibited. The conclusion reached by the court in its former opinion is the correct one, and therefore the motion for the rehearing will be overruled.

McFie and Seeds, JJ., concur in the result. O'Brien, C. J., dissents.