144 P.2d 145

**JANNEY v. FULLROE, Inc., et al.**

No. 4756.

Supreme Court of New Mexico.

Oct. 30, 1943.

Rehearing Denied Jan. 10, 1944.

Crampton & Robertson, of Raton, for employer, Fullroe, Inc., appellant.

Seth & Montgomery, of Santa Fe, for Employers' Liability Assur. Corporation, Ltd., appellant.

V. A. Doggett, of Raton, for appellee.

BICKLEY, Justice.

Plaintiff (appellee) recovered joint and several judgment under the Workmen's Compensation Act against his employer, Fullroe, Inc., a corporation, and its insurance carrier, Employers' Liability Assurance Corporation, Ltd., for loss of an arm and for injury to a thumb and wrist of the left hand.

In addition, the compensation award was increased because the gears of a machine on which plaintiff was injured were not appropriately guarded as required by statute. Plaintiff was further awarded $250 attorney fee and costs of suit.

Defendants (appellants) admitted liability for regular or usual compensation and the insurer offered to pay same but plaintiff refused to accept the offer upon the ground that he was entitled to recover a 50% penalty or additional compensation because no guard was placed at or upon said gears.

Both defendants contend the gears were situated so that they were protected by their location and no guard or other protection was necessary for them. Defendant, Employers' Liability Assurance Corp., Ltd., further contends that its policy covers only ordinary accidents arising in the course of the business of the employment and does not cover the penalty or additional compensation of 50% added by Sec. 5 of Ch. 92 of the Laws of 1937. Defendant, Fullroe, Inc., on the other hand, contends that the law does not impose the 50% penalty or additional compensation solely upon the employer.

Each defendant contends that plaintiff is not entitled to attorneys fees and costs because the suit was unnecessary inasmuch as the insurer had offered to pay the amount of the award, exclusive of the 50% increase.

The plaintiff worked for Fullroe, Inc., as a laborer digging test holes. At the time of the accident the employee was working in and about a mill the employer used in separating gold or ore from gravel. In the course of regular employment he undertook to grease certain gears of the mill, or machine as it is commonly called, when he became caught in such gears and was thereby injured. As a result, his right arm was amputated above the elbow and he also suffered injury to his left thumb and wrist.

The machine by which plaintiff was injured is of the small placer mining type used when the ore is "washed" in a revolving cylinder very much like a cement mixer. The power is supplied by a motor

enclosed or covered underneath and at one end of the cylinder. The engine and radiator were mounted upon a frame made of 8-inch beams which were 8 or more inches above the ground. A crank from the engine extended under the radiator.

The gears were located 6 feet above the frame on which the engine rested and were 19 inches back from the front of the engine and 20 inches to the right from center of the engine. In other words, the gears causing the injury were approximately 7 feet 2 inches above the ground. To grease the gears the plaintiff heated the heavy grease in the top or lid of a coffee can, then stood on the crank where it extends under the radiator, reached back and upwards above the gears and poured the grease into the revolving gears. He had finished the greasing job and turned his head around to the left, preparing to step down, when his right hand became entangled in the gears, causing the injury. He was wearing short gauntlet gloves that flared out 1½ or 2 inches at the wrist.

A screen or shield covered the entire engine, extending rooflike or slanting to a point beyond and underneath the gears involved. Barely above the gears was the rounded end of the steel drum or cylinder in which the gravel was washed, and above them a distance of about 2 to 4 feet was the inside edge of the platform and housing structure.

A clutch is operated by pulling a rope which extended down in front of the motor to within easy reach. Disengaging this clutch would have stopped the gears without stopping the other operations of the machine, but it had been the custom of the other employees to grease them while turning. No one in authority had given plaintiff instructions with respect to the method of applying the grease upon the gears. The method employed seems to have been a practical one.

The gears were found by the court to be at a place where no one would come in contact with them except the person greasing them; that no guards of any kind were placed at or upon the gears and that a practicable and suitable guard could have been constructed to prevent a person doing the greasing from coming in contact with them. The defendants contend that the gears by reason of their location were "appropriately guarded" and that plaintiff failed to prove the employer had knowledge of the existence of a practicable guard which could have been employed upon them at the time of the accident.

The court found that the appellant-insurer offered the amount of compensation awarded plaintiff, exclusive of the 50% penalty or increased compensation. The insurer-appellant had issued its standard form of workmen's compensation policy to the employer. The court concluded it was necessary for plaintiff to bring the action to recover and that an attorney fee should be added, and further that judgment should be against the employer and its insurer. It is asserted by appellants, and necessarily follows, that in the event this court finds

the gears were appropriately guarded by reason of their location, or should it be held that the insurer-appellant is not liable for the 50% increased compensation, the judgment for such penalty and attorney fee should be set aside as to the insurer-appellant.

The first point relied upon by the appellants for reversal of that part of the judgment which awards the additional 50% compensation is substantially as follows: "The statute does not compel the employer under all circumstances to install a guard around or upon gears of machinery; but only requires that such gears be reasonably or suitably guarded. The location of the gears, to some extent, determines the necessity for guards; and the facts in this case do not justify any increase in the normal compensation allowance."

The trial court made a finding of fact as follows: "That no guards of any kind were placed at or upon said gears, and that said gears were at a location above and away from a place where anybody would come in contact with them except only a person who was greasing the same, which operation was required to be done twice during each shift of seven hours. That a practical and suitable guard could have been constructed over and around said gears to prevent the person doing the greasing from coming into contact with them."

Appellants quote the pertinent statute, Sec. 301, Ch. 153, Laws of 1933 (now appearing as 1941 Comp. § 67-2816) with their own marks of emphasis as follows:

"All fly wheels, gears, belts, and all exposed moving machinery parts *that are liable to cause injury,* or dangerous parts of machinery used in and about a mine shall be *appropriately guarded to prevent injuries to attendants or* other persons."

Appellants deprecate the finding of the court, heretofore quoted, and say that the court misconceived the true meaning and import of the statute relied upon by the workman. Appellants say that the court in its finding used the word "guard" as a noun and that the statute does not use the noun but uses the verb form, "guarded". Appellant Fullroe, Inc., argues: "The noun 'guard', when used in speaking of machinery, has a very narrow and a rather precise meaning, namely: A mechanical device of some sort. On the other hand, the verb "to guard" has by definition a much broader meaning. It means simply 'to protect', and protection may be accomplished in any one of a number of ways. True, it might be accomplished by the installation of a 'guard' or it might be accomplished simply by location, arrangement, or method of operation. The statute does not say that every moving gear shall be equipped with a 'guard'. On the contrary, it uses the broader expression 'shall be appropriately guarded.' We think that the trial court incorrectly interpreted the statute as requiring every moving gear to be equipped with a 'guard', and that this interpretation is pretty plainly evidenced by Finding of Fact No. 5." This grammatical analysis is interesting but of little

value in construing the statute. In 28 C.J. 1046, "Guard" is thus defined: "As a noun, any one of various protecting or defensive devices for wearing or for attaching to an object as a machine or implement; one that guards against injury, danger, or attack. The meaning of the word as a verb is brought out by the definitions of the noun; and has been defined as meaning to protect from danger; to protect the edge of, especially with an ornamental border; to secure against surprise, attack, or injury."

We think the distinction, if any exists, is of little aid to appellants.

Appellee admits that gears could be appropriately guarded by their location, but he contends that under the facts of this case, as to this plaintiff the gears upon which the plaintiff was injured were not only not appropriately guarded, but not guarded at all.

The declared purpose of Ch. 153, Laws of 1933, as reflected by its provisions and its title is "to Provide for the Health and Safety of Persons Employed In and About Mines". To accomplish this it was provided among other things that all "gears" with which any employee or other person may be reasonably expected to come in contact shall be guarded. The distance of the gears above the floor in the present case would be doubtless a sufficient protection against any apparent danger to employees on the floor, as to such it may be assumed the gears were appropriately guarded; but it was not only those employees that the statute required to be protected, but all those engaged in the defendant's service in the establishment where the machinery was situated and being operated. "Appropriately guarded" is a relative term or expression, and whether the statutory requirement in that respect has been complied with necessarily depends upon the facts of the particular case. Machinery may be so distant from the place where an employee is engaged as to render it entirely safe as to him. On the other hand, it may be located in such proximity to the place he is called to perform his service that to protect him against danger an artificial guard is necessary. The necessity for an artificial guard, therefore, depends upon the existence of certain conditions, and is a question of fact for the jury or the court sitting as a jury. In the present case it was the duty of the employer to protect the workman against the danger incident to contact with the revolving gears. His duty required him to perform his work in close proximity to them. The employer knew or should have known that it was customary to grease the gears while they were in motion. He was not forbidden to do so. The employer was charged with notice of the danger to the workman and it was therefore its duty to appropriately guard the gears. The failure to do so was contrary to the statute. Since location alone, as we have seen, did not afford an appropriate guard, we find no pretense of a guard. The court found, upon substantial evidence, that a practical and suitable guard could have been constructed over

and around the gears to prevent the person doing the greasing from coming into contact with them.

The fact that appellants admit all the essentials of recovery by the workman except as to the 50% additional compensation excludes any idea that the injury was self-inflicted and lends additional support to the finding of the trial court. In other words, without going into the niceties of an application of the doctrine of res ipsa loquitur, we think the circumstance that the accident occurred, resulting in the injury to the workman, is of some value as showing a negligent failure to appropriately guard the gears. Cf. Hepp v. Quickel Auto & Supply Co., 37 N.M. 525, 25 P.2d 197.

The appellants complain that the evidence does not show that anyone ever told them that it was in the interest of safety to guard these particular parts of the employer's moving machinery. The statute does not thus relieve the employer of its duty to comply with its provisions. True, the statute imposes duties upon the State Inspector of Mines to give notice to the owners, operators or managers of mines when he finds that mines are not furnished with reasonable and proper machinery and appliances for the safety of miners and other employees but the failure of the mine inspector to give such notice does not relieve the owners, operators or managers of the duty resting upon them.

The first point presented by the appellant is without merit.

Likewise without merit is the point that since the action to recover compensation was unnecessary the allowance of attorneys fees was not justified. Plaintiff was required to employ counsel to establish his right to the 50% additional compensation, which he did.

The opinion of the court is unanimous on the two questions heretofore resolved.

At this point the appellants part company. The insurer contends that the 50% additional compensation or penalty in whichever light it shall be viewed is recoverable under Sec. 5 of Ch. 92, Laws of 1937, Comp.1941, Sec. 57-907 from the employer only.

The employer, on the other hand, says this increased award should be allowed also against the insurer.

The statute last cited, italicized as in the 1937 act, is as follows:

"Section 5. That Section 156-107, of the New Mexico Statutes Annotated, 1929 Compilation, be and it hereby is amended to read as follows:

"156-107. Safety Devices—Penalty for Failure to Use or Provide. In case an injury to, or death of a workman results from his failure to observe a statutory regulation appertaining to the safe conduct of his employment, or from his failure to use a safety device provided by his employer, then the compensation otherwise payable under this act shall be reduced by fifty per centum (50%). In case an injury to, or death of, a workman results

from the failure of the employer to provide the safety devices required by law, *or in any industry in which safety devices are not provided by statute, if an injury to, or death of, a workman results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman,* then the compensation otherwise payable under this act shall be increased by fifty per centum (50%). *Provided further, that any additional liability resulting from any such negligence on the part of the employer shall be recoverable from the employer only and not from the insurer, guarantor or sureties of said employer under this act except that this shall not be construed to prohibit employers from insuring against such additional liability.*

Following a usual practice of the legislature the italicized portions show what new language was added by the amendment.

The employer-appellant's argument, as we understand it, proceeds thus: The portion of the act last quoted which is *not* italicized was present in the Workmen's Compensation Act of 1917, Laws 1917, c. 83, § 7, and carried forward through superseding acts and compilations until the amendments by Sec. 5, Ch. 92, Laws of 1937; that the proviso applies only to the italicized portion of the sentence immediately preceding such proviso; that this view is supported by the likelihood that the phrase "such negligence" in the proviso refers to the "negligences" mentioned solely in the italicized portion of the preced-

ing sentence. It combats the argument of the insurer that the word "penalty" appearing in the title of the section has some significance. It asserts that by the 1937 amendment the legislature laid down the law as follows:

"There are two kinds of liability for failure to provide safety devices:

"1. In industries where safety devices are required by law, the failure of the employer to provide such devices gives rise to the fifty per cent. increase in compensation. This is just the same as under the prior law and no change is made in anybody's liability. The increase is recoverable from both the employer and the insurer.

"2. In industries where safety devices are not required by law, the employer must supply such reasonable safety devices as are in general use, and his negligence in failing to do so gives rise to the fifty per cent. increase in compensation. This liability did not exist under the prior law but is an additional liability; and this additional liability resulting from such negligence on the part of the employer shall be recoverable from the employer only and not from the insurer."

This is the view adopted by Mr. Chief Justice SADLER and Mr. Justice MABRY and Mr. Justice THREET as more fully set forth in a separate opinion.

Counsel for the insurer not less cogently argue:

"Now as to the unauthorized 'use' of the word 'penalty' in the 1929 Compilation.

The compiler called it by the term commonly used by text writers on the subject—See Schneider Statutes, referred to p. 20 of our Brief in Chief. We also direct the Court's attention to the title of the Act, which includes: 'Providing penalties for failure to use or provide safety devices.' If not properly entitled before, certainly the Legislature did so when enacting Chapter 92, Laws of 1937.

"We will never know exactly why the Legislature amended Section 7 of the Act, or precisely what it intended to accomplish. We have only the actual language of the law, with no prior amendments, no cases decided by this Court under the original law, and so far as we have knowledge, no particular controversies arose which attracted the attention of the Legislature. Purely as a speculative basis, but we believe with logic, we advance the theory that the 'Mine Act', Chapter 153, Laws of 1933, and perhaps other safety acts in that and the following session were studied by employers and insurance companies until about the time of the 1937 session. Prior to passage of the 'Mine Act' of 1933, there was no 'penalty' for failure to 'appropriately' guard gears, for there was no statute on the subject of such machinery, (although employee and employer both argue in effect, the workman had this 'insurance protection for twenty years'.) As we suggest, this law and others like it may have caused insurance companies to have placed in Senator Thaxton's hands an appropriate Section 5 of Chapter 92, which they believed would prove satisfactory by requiring the employer to pay all 'additional compensation', unless they specifically insured against such 'liability'.

"We cannot believe the Legislature intended to enact the kind of law urged by employer, beginning at the bottom of page 14 of its Brief, for if it was so intended, the bill could have been so much clearer and so much easier to draft, by putting all of the common law negligence provisions together in a separate paragraph at the end of the original section, rather than amending it in two places, by inserting certain common law provisions in the body of the original, followed by 'statutory negligence' provision and then another amendment with respect to the recovery from the employer as the result of any *such negligence*. Of course, failure to furnish a safety device required by statute may be negligence per se, but it is also 'negligence in law' to fail to provide workmen with safety devices in general use in an industry. We believe the Legislature meant, exactly that which it enacted into law and when read as written, it seems clear the employer and not the insurer is liable for the additional compensation resulting from the failure to furnish required safety devices.

"In most permanent injury cases, the workman is seldom fully compensated. To most men, money cannot replace an arm or other important body member. The policy of the Legislature was clearly to prevent accidents by requiring the employer to furnish safety devices required by statute and also those devices in general use, and fur-

ther by requiring the workman to use such safety devices so furnished. It was thought this would be more advantageous to the workman than compensation after an injury occurred. The 1937 amendment sought to compel the employer to furnish both kinds of safety devices by imposing on him what is in effect a penalty—either 50% increase in compensation, or in the alternative, an increased premium for such additional insurance coverage. It was intended to impose this penalty, one method or the other, directly upon the employer and not permit him to escape by the general insurance against liability imposed by the Workmen's Compensation law in the use of a standard policy.

"This Legislative policy applies, of course, as strongly to the failure to furnish a statutory safety device as it does to the failure to furnish a safety device in general use, though not required by statute. It indicated a new policy of imposing the penalty one way or the other, on the employer, as an added protection to the employee. The employer, not the insurer, is the one who presumably has knowledge of the existence or non-existence of safety devices on isolated pieces of machinery, a fact well known to the legislature, and to prevent such accidents it has seen fit to make the employer pay for not furnishing required devices.

"If it were not for the specific provision authorizing insurance for 'such additional liability', it is quite likely a contract to insure against a failure to provide statutory devices 'where made a misdemeanor' would be declared void as against public policy. Without legislative authority, ordinarily one cannot insure against his own violations of a law."

In addition to the argument of insurer-appellant it is thought by BICKLEY and BRICE, JJ., to be worthy of notice that Ch. 92 of the Laws of 1937 was practically a rewrite of workmen's compensation acts theretofore existing. Apparently every section of the earlier compensation acts engaged the attention of the legislature of 1937. Some of the sections of the earlier acts were reenacted without change, whereas many of the sections were amended. In Stevenson v. Lee Moor Contracting Co., 45 N.M. 354, 115 P.2d 342, 344, we said: "Our Workmen's Compensation statute was enacted in 1917 and re-enacted with amendments as Ch. 92, L.1937."

They suggest also that a reason for the new enactment may be found in the thought that as to normal compensation resulting from accidents, usually beyond the control or anticipation of the employer, the insurance feature of the Workmen's Compensation Act ought to be compulsory, whereas since compliance with the requirements of the statute to furnish safety devices is definite and mandatory, the employer ought to have the option of carrying insurance or not as he sees fit. There seems to be no good reason to require the employers providing safety devices and those who do not, to pay out the same kind of insurance premiums. Why should employers who sup-

ply safety devices help pay for insurance of those who do not?

Examining Sec. 5 of Ch. 92, Laws of 1937, immediately preceding the proviso, they say it will be seen that the earlier statute was broadened so as to include industries in which safety devices were not provided by statute if an injury to a workman resulted from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman. This was followed by the declaration that the "compensation otherwise payable under this act shall be increased by fifty per centum (50%)". The portion of the section down to the proviso is what is commonly known as the enacting clause part of the section. Down to the proviso the enactment was complete and unambiguous. Could it be reasonably contended that in case of an injury to the workman resulting from his failure to use a safety device provided by his employer in an industry in which safety devices are not specifically provided by statute but which have been provided by the employer because in general use in the industry, that the compensation payable under the act shall not be reduced by fifty per centum (50%)? The proviso interjects something new. It is equally new as to all of the subject matter preceding it in the section in which it is inserted.

BICKLEY and BRICE, JJ., think there is much to be said in favor of the insurer-appellant's argument that the subject matter of the section appearing before the proviso is in the nature of a penalty. If such was the legislative intent, which they say is indicated from both the title to the act and the headnote to Sec. 5 thereof, then the purpose would be better accomplished by casting the consequences of a failure to provide safety devices upon the employer either in the form of being required himself to pay the additional liability or incurring the additional expense of insuring against such additional liability. Since the provsio is new, its appropriate office being to restrict, restrain or qualify some preceding matter, it is not apparent to us, as it seemingly was to the trial court and to the employer-appellant, that it should restrain or qualify only a portion of the sentence which precedes it since that sentence, composed though it be of language contained in the previous act as well as amendatory language, represents a new enactment. Since the old language as well as the new expressed the common purpose of providing for the safety of workmen, BICKLEY and BRICE see no apparent reason why the legislature should have intended a lack of uniformity in the operation of the protective provisions.

The result of the construction of the statute as announced by SADLER, C. J., and MABRY and THREET, JJ., is that the employee injured by failure of the employer to provide the safety devices required by law will have the benefit of recourse against both the employer and an insurer; whereas, the employee who is injured in the course of his employment in an industry in which safety de-

vices are not provided by statute, but nevertheless such injury is caused by the failure of the employer to provide reasonable safety devices in general use, such employee is guaranteed only such protection as the solvency of the employer may afford. BICKLEY and BRICE, JJ., think that this inequality is a strong argument in favor of their interpretation since it is to be presumed that the legislature intended equal protection of the laws to all workmen coming under the provisions of the Workmen's Compensation Statute.

If it were not uniform in its operation, constitutional objections might be urged against it.

The operation of a proviso is usually and properly confined to the clause or distinct portion of the enactment which immediately precedes it. 59 C.J., Statutes, Sec. 640.

Black's Law Dictionary defines "Clause" thus: "A single paragraph or sub-division of a legal document, such as a contract, deed, will, constitution or statute. Sometimes a sentence or part of a sentence." Since the sentence and its parts immediately preceding the proviso deal with the subject of safety devices and the duty of the employer to furnish them, BRICE and BICKLEY, JJ., are not persuaded that it was the legislative intent to qualify one part of the sentence more than another with the provisions of the proviso.

A trouble with the mental processes of SADLER, C. J., and those who concur with his views on this point is that their minds' eye too closely dwells upon the amendment alone and not enough upon the section as amended and reenacted. The proper way to read the present statute is as if the statute had been originally enacted in its amended form. "The amendment becomes a part of the original statute as if it had always been contained therein." 59 C.J., Statutes, Sec. 647, citing Ex parte Carrillo, 22 N.M. 149, 158 P. 800.

The result is that BICKLEY and BRICE, JJ., agreeing with the contention of the insurer-appellant, conclude that the judgment should be reversed and the cause remanded with directions to the district court to set aside the judgment heretofore rendered and to enter a judgment similar in terms and effect, except that as to the additional compensation and attorneys fees in the trial court and in this Court the judgment should run against the employer, Fullroe, Inc., only. On the other hand, SADLER, C. J., and MABRY and THREET, JJ., constituting a majority and feeling that the judgment as rendered is correct in its entirety and should be affirmed with an allowance of $250 in favor of the appellee for attorneys fees in this Court.

It is so ordered.

BRICE, J., concurs.

SADLER, Chief Justice (concurring in result).

We concur in the opinion of Mr. Justice BICKLEY except the portion which denies liability of the insurer for the fifty per

cent. additional award arising from employer's failure to use a safety device required by law. In our opinion, it misconstrues the statute. In its original form the statute first appears as L.1917, c. 83, § 7, a part of the Workmen's Compensation Act as first enacted. It bears the same section number in the reenactment of the law, with changes and additions in certain respects but not in this respect, as L.1929, c. 113, 1929 Comp., § 156-107. In both the 1917 and 1929 laws, the section reads: "In case an injury to, or death of, a workman results from his failure to observe a statutory regulation appertaining to the safe conduct of his employment, or from his failure to use a safety device provided by his employer, then the compensation otherwise payable under this act shall be reduced by fifty per centum. In case an injury to, or death of, a workman results from the failure of the employer to provide the safety devices required by law then the compensation otherwise payable under this act shall be increased by fifty per centum."

In further revision and largely a reenactment of the Workmen's Compensation Law by L.1937, c. 92, 1941 Comp. § 57-907, this subject matter is treated as Section 5 of the new act. The language of the section as it had appeared since 1917 was reenacted without change of a word or a syllable. As amended with the amendatory language italicized just as it appears in L. 1937, c. 92, § 5, it reads: "In case an injury to, or death of a workman results from his failure to observe a statutory regulation appertaining to the safe conduct of his em-

ployment, or from his failure to use a safety device provided by his employer, then the compensation otherwise payable under this act shall be reduced by fifty per centum (50%). In case an injury to, or death of, a workman results from the failure of the employer to provide the safety devices required by law, *or in any industry in which safety devices are not provided by statute, if an injury to, or death of, a workman results from the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman,* then the compensation otherwise payable under this act shall be increased by fifty per centum (50%). *Provided further, that any additional liability resulting from any such negligence on the part of the employer shall be recoverable from the employer only and not from the insurer, guarantor or sureties of said employer under this act except that this shall not be construed to prohibit employers from insuring against such additional liability.*"

The problem is a simple one of statutory construction, the chief end and aim of which always is to arrive at true legislative intent. The original language of this section having been re-enacted on two separate occasions, it is not to be deemed a new enactment as to so much of the section as remains in its original form, as held by Mr. Justice BICKLEY and Mr. Justice BRICE, but rather as a continuation thereof. Horack's Sutherland Statutory Construction, 3rd Ed. § 1933; Cortesy v. Territory, 7 N.M. 89, 32 P. 504; State

v. Thompson, 37 N.M. 229, 20 P.2d 1030; Dietz v. Hughes, 39 N.M. 349, 47 P.2d 417. This is a rule of construction which we heretofore often have recognized as indicated by the cases just cited. On the other hand, there is a rule of construction that a statute should be read as a whole, as to future transactions the provisions introduced by the amendatory act being read together with those of the original section re-enacted in the amendatory act or left unchanged thereby, as if they had been enacted originally as one section. Horack's Sutherland Statutory Construction, 3rd Ed., § 1934.

However, all rules are but aids in arriving at true legislative intent (In re Vigil's Estate, 38 N.M. 383, 34 P.2d 667, 93 A. L.R. 1506), and should never be used to override same where it otherwise plainly appears as in this case. Grammatically, the employer-appellant presents for consideration the more logical construction. The amendment interjects into the statute a new liability, namely, for negligence on employer's part in failing to supply reasonable safety devices in general use. It is brought in by the language first appearing in italics in the statute as copied hereinabove. Intervening between it and the proviso is the language of the original statute increasing the compensation otherwise payable by fifty per cent. Then follows the proviso in a separate sentence declaring that "any additional liability" resulting from "any such negligence" shall be recoverable from the employer only and not from the insurer "except that this shall not be construed to prohibit employers from insuring against *such additional liability*". (Italics ours).

The question arises as to what the legislature intended when it spoke of "any additional liability" and "any such negligence". Was it referring to the additional liability incurred for failure of the employer to provide a safety device required by law as well as the additional liability henceforth to be incurred for failure to provide a reasonable safety device in general use? The employer already and since 1917 had been subject to the additional liability arising in the former case. Moreover, since 1917, by mandate of the statute, the employer had been compelled to carry insurance to secure the employee in the payment of this additional liability as well as for any other compensation, under a policy providing that the insurer "shall be directly and primarily liable to the workman and in event of his death, his dependents, to pay the compensation for which the employer is liable". 1941 Comp. § 57-903. This fact must be borne in mind in determining the legislative intent.

With this background to aid us, it is easy to give to the language "any *such* negligence" its proper grammatical construction by identifying the antecedent of "such negligence" as the "negligence" last above mentioned and brought in by way of amendment as a new ground for additional compensation, namely, the employer's failure to supply reasonable safety devices in general use. As if to differentiate between the negligence (though not so called by

name) involved in an employer's failure to provide a safety device required by law and the negligence arising from the employer's failure to supply reasonable safety devices in general use, now for the first time being brought into the statute as a basis for additional compensation, the legislature provided that any additional liability arising from "any *such* negligence" should be recoverable from the employer only and not from the insurer, etc. The mind very naturally certainly at first blush, relates the words "any additional liability" to that created by the amendment and likewise relates the words "any such negligence" to that mentioned in the amendment as the basis for the additional compensation. The longer one revolves the matter, the stronger becomes the impression that this is the true meaning and intent of the language employed. We gave the words "such injury", in the Workmen's Compensation Act, a like construction where employed in the statute construed in Vukovich v. St. Louis, Rocky Mountain & Pacific Co., 40 N.M. 374, 60 P.2d 356.

It seems quite incongrous to think of the additional liability mentioned in the proviso (which the employer alone must bear but is not prohibited from insuring against) as one and the same, or as embracing the same liability which, under the law as it then existed and for twenty years previously had existed, he not only is not prohibited from, but is compelled to, insure against. The argument is not persuasive that this sudden and anomalous change in legislative policy was intended.

The opposite construction tendered by insurer-appellant seems illogical in that, if correct, it takes away from the employee a security he had under the old law for all compensation recoverable for an injury arising from employer's failure to provide a safety device required by law as against the noticeable tendency of our legislature over the years to liberalize the act in favor of the employee. Certainly, prior to this amendment, any injury arising from a default of the kind just mentioned would support a recovery of the added compensation both against the employer and the insurer. The statute authorizes and commands the same. Under the minority view of this question, it would be optional with employers whether to protect the employee by insurance in his recovery of the additional compensation authorized by the original act as well as that based on the amendment. It seems obvious that the legislature intended no such result.

We do not have to seek for reasons weighty enough to have influenced the legislative decision to leave the requirement for insurance compulsory in the one case and optional in the other. They suggest themselves. In the matter of safety devices required by law, the employer has no discretion. They are named in the statute and he must employ them. In such case the legislature has decided for him both the question of their worth and the wisdom of employing them. When it comes to the requirement for reasonable safety devices in general use, however, we find a different situation. The determina-

tion of what is a reasonable safety device in general use necessarily rests in the judgment and discretion of the employer. Much will depend on how he exercises that discretion. If he permit thoughts of cost and expense to outweigh considerations of safety, the statute is circumvented and the personal security of his employees is imperiled. The legislative mind apparently felt that it would furnish the employer an incentive for resolving close questions of reasonableness and general use in favor of the workman and against himself, even though permitted insurance coverage at his option, if either in good or bad faith, he mistakenly or wrongfully resolved the question in his own favor at the risk of added liability.

Still another realistic consideration appears to render understandable legislative action in this respect. Under the existing law, except under conditions not important to mention, every employer was required to carry insurance. From the time of its enactment the Workmen's Compensation Act so provided. This insurance was for the benefit of employers as well as employees throughout the State. When these policies were written the insurer calculated the factor of risk involved by reason of the fifty per cent. additional compensation authorized by this section of the statute and fixed its premium accordingly. With the creation of new grounds for recovery of the extra compensation, it seems to have impressed the legislature as unfair to the insurer to impose the additional liability on it, if it legally could, without granting the privilege of charging an added premium therefor. The terms of existing policies, naturally would extend beyond the effective date of the amendment and unquestionably, in many cases, employer and employee alike would be found insisting that losses occurring subsequent to such date were within the coverage supplied by existing policies. Accordingly, by limiting to the employer alone recovery of extra compensation based upon the newly created ground, unless contracted for outside the terms of existing policies, the legislature not only bridged the transition period arising from the relation of current policy expirations to effective date of the amendment but at the same time by legislative declaration forestalled any attempt to fasten the additional liability on insurers except where contracted for in the light of the amendment.

Up to this point, we have simply viewed the language of the amendment against the background afforded by the existing statute and, having thus placed the two in a proper perspective, have applied elementary rules of grammatical construction to find in the statute the meaning we give it. A possibly controlling consideration, not heretofore mentioned, may explain the amendment. It argues strongly for the construction we give the statute and offers the most plausible explanation of why the legislature authorized the fifty per cent. additional compensation where the injury results from failure of the employer to furnish a reasonable safety device in general use as well as where the injury results from fail-

ure to provide a safety device required by law.

As the statute stood at the time of the amendment and for many years prior thereto, the employee would suffer a loss of fifty per cent. of his normal compensation through failure to use any safety device supplied by his employer, whether required by law or not; whereas, the employer would incur liability for the additional compensation only in the event he failed to provide a safety device required by law. It undoubtedly impressed the minds of the legislators as unfair that the employee should suffer a diminution of compensation in two defined instances for failure to use a safety device supplied by the employer, leaving the employer under the added liability for failure to supply safety devices in but the one instance. In other words, if the employee was to lose half his compensation in either of two instances for non-use of safety devices supplied by the employer, fairness and equality would seem to demand that the employer should suffer liability for the extra compensation for failure to supply the safety device in both instances. So it must have impressed the legislature.

Accordingly, having set out to equalize the law in the respect indicated, the legislature did so by adding as a new ground for recovery of the extra compensation the employer's failure to supply the safety devices (limited to those that are reasonable and in general use) whose non-use, when supplied, would reduce the employee's compensation by one half. The proviso as to insurance was merely incidental to the main object of equalizing the statute in the respect mentioned. Realizing, however, that this new liability would normally be outside the protection of current policies and beyond contemplation of the existing statute on insurance, the legislature added the proviso. Hence, liability for the additional compensation authorized by the amendment was imposed on the employer alone, the legislature seemingly finding justification therefor, as already indicated, in the thought that fear of the added liability would cause the employer to resolve close questions of reasonableness and general use against himself and in favor of the employee. In our view, it results that the phrase "additional liability", mentioned in the proviso, refers to that newly created by the amendment and it presupposes the liability for extra compensation existing at the time the amendment was undertaken.

It thus is seen that, while the idea of equality was influencing the legislative mind during the process of amendment, it was in a more fundamental respect than reflected in the suggestion of the minority that their construction would place all employees on the same plane in respect of insurance protection. It is noticeable that it would accomplish uniformity by denying such protection to both groups. Rather, we think the controlling thought was to remedy a glaring inequality between all employees and all employers, as

distinct groups, by giving to the former extra compensation for injuries arising out of the latters' failure to supply those safety devices whose non-use, when supplied, would reduce the employees' compensation by one half.

A reason for this provision regarding insurance, advanced by insurer-appellant and accepted by the minority, is not very persuasive. It is suggested in explanation of imposition of the liability on employer alone, with the option of having insurance, that the additional compensation is in the nature of a penalty; that in most permanent injury cases the employee is seldom fully compensated, money being unable to replace an arm or other important body member; and that, if the added compensation be imposed on the employer alone, he would the more likely supply the safety device and thus avoid the injury. The argument fails in the face of the statutory authorization to insure against even this liability and, carried to its logical conclusion, it questions the wisdom of insuring against any loss.

Nor would it alter our idea of the true meaning of the statute to view as a penalty the additional award authorized. It is interesting to note in this connection, however, that as originally enacted in 1917 and as re-enacted in 1929, no mention of the word "penalty" occurs in connection with this section of the statute. Its use first appears as a headnote to § 156-107 supplied by the compiler in preparing New Mexico Statutes Annotated, 1929. In revising and

re-enacting the Workmen's Compensation Act by L.1937, c. 92, the legislature amended by reference to section numbers appearing in 1929 Compilation, thus bringing in the headnotes employed by Courtright. Whether in so doing, the legislature studiedly characterized as a penalty the additional awards theretofore and then authorized, we do not attempt to say. In the view we take of the statute's meaning, it can make no difference.

We think the judgment as rendered is correct and should be affirmed and it will be so ordered.

MABRY and THREET, JJ., concur.